2006 UT 52

**Robert L. DAVIS and Jenean Brothers, each on their own behalf and also as the natural parents, and Robert L. Davis, as personal representative of the Estate of Bryan R. Davis, deceased, Plaintiffs and Appellants,**

v.

**CENTRAL UTAH COUNSELING CENTER, Dr. Robert Jeppson, D.O., State of Utah, Juab County, Clark Holladay, David Dye, John Reeves, and John Doe Health Care Providers 1–10, Defendants and Appellees.**

No. 20040544.

Supreme Court of Utah.

Sept. 12, 2006.

Rehearing Denied Oct. 25, 2006.

Jeffrey N. Aldous, Arthur Dupre, Provo, Bruce M. Pritchett, Jr., Salt Lake City, for plaintiffs.

Clifford C. Ross, Salt Lake City, for Counseling Center and individuals.

Mark L. Shurtleff, Att'y Gen., Brent A. Burnett, Debra J. Moore, Asst. Att'ys Gen., for the State.

Jared W. Eldridge, Nephi, for Juab County.

PARRISH, Justice:

¶1 Plaintiffs Robert Davis and Jenean Brothers seek recourse for the tragic death of their son Bryan Davis, who committed suicide while under the care of Central Utah Counseling Center ("CUCC"). Plaintiffs filed suit against CUCC, identified and un-identified employees of CUCC, the State of Utah, and Juab County. The district court dismissed the State of Utah and Juab County because of plaintiffs' failure to state a cogni-zable claim against them. It thereafter granted summary judgment in favor of CUCC and its employees because of plain-tiffs' noncompliance with the notice require-ments of the Utah Governmental Immunity Act.[1] Plaintiffs appeal both orders. We af-firm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Nineteen-year-old Bryan Davis com-mitted suicide on November 23, 1998, while undergoing treatment at CUCC in Nephi, Utah. Plaintiffs retained attorney Bruce Pritchett to pursue claims against CUCC.

¶3 Utah's Governmental Immunity Act ("Immunity Act") provides that actions against a governmental entity and its em-ployees may proceed only if a notice of claim is directed and delivered to specified persons within one year after the claim arises. Utah Code Ann. §§ 63–30–11, –13 (1998). On De-cember 23, 1998, Pritchett visited CUCC's office and inspected Davis' medical records. During this visit, Pritchett spoke with a man "who apparently had authority over the of-fice." Uncertain about CUCC's legal identi-ty, Pritchett asked this unidentified employee whether CUCC was "part of the state's men-tal health system for this area." The em-ployee answered affirmatively.

¶4 Eleven months later, on November 22, 1999, Pritchett called the Division of Mental Health of the Utah State Department of Human Services and received confirmation from an unidentified employee that CUCC was part of that Department. Pritchett then telephoned the Utah State Attorney Gener-al's office and spoke with Assistant Attorney General Reed Stringham. After Pritchett told Stringham that CUCC was a state agen-cy, Stringham instructed him to direct the notice of a claim against CUCC to the State Attorney General's office. Pritchett then vis-ited the website for the Department of Hu-man Services, which listed CUCC among its "Mental Health offices."

¶5 That same day, Pritchett finalized and directed a notice to the State Attorney Gen-eral's office and, "as an additional precau-tion," to the Juab County Clerk. Pritchett did not direct a notice to CUCC. Sometime after the one-year limitations period had ex-pired, one of the Juab County Commission-ers provided a copy of the notice to CUCC's governing board.

¶6 In December 2000, CUCC filed a de-claratory judgment action in Juab County, seeking a determination that it was entitled to the protections of the Immunity Act, Utah Code Ann. §§ 63–30–1 to –34 (1998). CUCC claimed that it had been formed by an agree-ment executed on December 31, 1990, by Juab, Millard, Piute, Sanpete, Sevier, and Wayne Counties. According to CUCC, the six counties acted pursuant to the Interlocal Cooperation Act, Utah Code Ann. §§ 11–13–

---

1. Under Utah Code section 63–30–13 (1998), identical notice requirements govern claims against political subdivisions and claims against the employees of political subdivisions. As a result, our analysis of plaintiffs' claims against CUCC applies with equal force to plaintiffs' claims against the CUCC employees. For the sake of clarity, we focus our discussion on CUCC and intend that this discussion similarly dispose of plaintiffs' claims against the CUCC employees.

1 to –36 (1990), and formed CUCC as an interlocal agency with the intention that CUCC would provide mental health services to the counties' residents. CUCC was originally named Central Utah Mental Health Alcohol and Drug Center. In 1993, the name of the agency was changed to Central Utah Mental Health Substance Abuse Center. The agency's name was changed one final time to Central Utah Counseling Center in 1994.

¶ 7 Because of its status as an interlocal agency, CUCC argued that it was entitled to the protections of the Immunity Act. Under the Immunity Act, interlocal agencies are given protection as "political subdivisions." *See* Utah Code Ann. § 11–13–5.5 (1989) ("The separate legal or administrative entity created [under the Interlocal Cooperation Act] is a political subdivision of the state...."). The Immunity Act provides that an action against a political subdivision may proceed only if a notice of claim is directed and delivered to "a member of the governing board, the executive director, or executive secretary" within one year after the claim arises. *Id.* §§ 63–30–11, –13.

¶ 8 Plaintiffs responded to CUCC's commencement of the declaratory judgment action by filing a medical malpractice claim against CUCC, employees of CUCC, the State, and Juab County. Plaintiffs later amended the complaint to include a cause of action for wrongful death. The district court dismissed the State and Juab County for failure to state a claim, granted plaintiffs' motion for a change of venue from Tooele County to Juab County, and consolidated the two cases.

¶ 9 After the consolidation of the cases, CUCC moved to dismiss plaintiffs' claims for lack of subject matter jurisdiction, asserting that plaintiffs had failed to comply with the notice requirements of the Immunity Act. The district court denied the motion. The district court also denied CUCC's subsequent partial summary judgment motion, finding that there was insufficient evidence that CUCC was a governmental entity. After discovery, CUCC renewed its motion for summary judgment, which the district court then granted. On the basis of the undisput-

ed facts, the district court determined that CUCC was in fact a governmental entity and that plaintiffs had failed to comply with the notice requirement of the Immunity Act. Plaintiffs then filed a motion for a new trial, which the district court denied.

¶ 10 Plaintiffs timely appealed the summary judgment order, as well as the district court's earlier dismissal of the State and Juab County, but failed to serve either the State or Juab County with its notice of appeal. Plaintiffs did, however, later serve a copy of their appellate brief on the State and Juab County. We initially transferred this case to the court of appeals but subsequently vacated the transfer order and recalled the case. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(j) (2000).

## ANALYSIS

¶ 11 Plaintiffs appeal the district court's order dismissing their claims against the State and Juab County, as well as the summary judgment entered in favor of CUCC and its employees. We first review and affirm the dismissal of the State and Juab County. We then evaluate the summary judgment order and affirm the district court's determination that CUCC was entitled to summary judgment because it is a properly formed interlocal agency entitled to the protections of the Immunity Act and plaintiffs failed to strictly comply with its notice requirements.

## I. THE STATE OF UTAH AND JUAB COUNTY

### A. *Notice of Appeal*

¶ 12 The State and Juab County contend that we lack jurisdiction over plaintiffs' appeal of their dismissal because plaintiffs failed to serve them with a copy of their notice of appeal. We disagree, concluding that plaintiffs' failure to serve the State and Juab County with copies of their notice of appeal was not jurisdictionally fatal.

¶ 13 Notices of appeal are governed by rule 3 of the Utah Rules of Appellate Procedure. The appealing party must file a notice of appeal with the trial court and serve

a copy of the notice on "counsel of record of each party to the judgment or order" from which the appeal is taken. Utah R.App. P. 3(a), (e). The timely filing of a notice of appeal is the act that vests the appellate court with jurisdiction over the appeal. Therefore, in cases where an appellant timely files notice but fails in some other respect to comply with rule 3, the appellate court may dismiss the appeal but is not required to do so. Subsection (a) of the rule provides:

> Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the appellate court deems appropriate, which may include dismissal of the appeal or other sanctions short of dismissal, as well as the award of attorney fees.

*Id.* 3(a).

¶ 14 We have applied rule 3(a) to hold that the timely filing of a notice of appeal is the only jurisdictional requirement for appellate review. *See, e.g., Gorostieta v. Parkinson*, 2000 UT 99, ¶ 19, 17 P.3d 1110 ("It is clear from the plain language of rule 3(a) that the timely filing of the notice of appeal is the only jurisdictional step."). Even where an appellant files a notice "crippled with defects" and fails to effectively serve the opposing party, the notice is jurisdictionally sufficient if it complies with the timeliness requirement. *Harley Davidson of N. Utah v. Workforce Appeals Bd.*, 2005 UT 38, ¶ 16, 116 P.3d 349.

¶ 15 In this case, it is undisputed that plaintiffs fulfilled this jurisdictional requirement by filing a timely notice of appeal. Therefore, while we have discretion to dismiss the appeal due to plaintiffs' failure to serve the notice on the State and Juab County, we are not required to do so. And we are disinclined to do so here where there is no evidence that plaintiffs' failure to serve the notice resulted in any actual prejudice to either the State or Juab County. Indeed, both the State and Juab County received actual notice of the appeal through their receipt of plaintiffs' brief, entered an appearance in these proceedings, and filed timely briefs addressing the substantive issues.

### B. Dismissal

¶ 16 Having established our jurisdiction to review the district court's dismissal of the State and Juab County, we now consider the propriety of their dismissal. Whether a party was properly dismissed for failure to state a claim is a question of law, which we review for correctness. *Warner v. DMG Color, Inc.*, 2000 UT 102, ¶ 6, 20 P.3d 868. We turn first to the district court's dismissal of the State and then consider its dismissal of Juab County.

#### 1. The State

¶ 17 The State moved to dismiss plaintiffs' complaint for failure to state a claim upon which relief could be granted. Specifically, the State alleged that CUCC is not a state entity and that the State has no liability for the conduct of CUCC or its employees. The district court granted the State's motion. Plaintiffs argue that the dismissal was erroneous because CUCC is actually an office or instrumentality of the State of Utah Division of Mental Health. Alternatively, plaintiffs argue that the State is estopped from contesting CUCC's status as a state agency because of plaintiffs' reliance on statements made by state employees, including Assistant Attorney General Reed Stringham. We address each argument in turn.

##### a. CUCC Is Not Part of the Division of Mental Health

¶ 18 Plaintiffs contend that CUCC is actually an office of the State Department of Human Services, Division of Mental Health. Plaintiffs point first to the statutory and operating relationship between CUCC and the Division of Mental Health. Under Utah Code section 17A–3–602(1) (1998), "county governing bodies" are "local mental health authorities" and must "provide mental health services to persons within their respective counties." These local mental health authorities operate "under the policy direction of the [Board of Mental Health] and the administrative direction of the [Division of Mental Health]." *Id.* In addition, local mental health authorities receive state funding and may enter into contracts with the Division. *Id.* § 17A–3–602. These local mental health au-

thorities are expressly permitted to pool their resources and create interlocal agencies "to provide mental health ... services." *Id.* § 17A–3–602(1).

¶ 19 In accordance with this statutory scheme, six Utah counties formed CUCC in 1990. From 1997 to 2000, the Division contracted with CUCC as part of its statutory mandate to "arrange for a comprehensive continuum of services." *Id.* § 62A–12–102(2)(g) (1997). According to plaintiffs, CUCC received eighty-five percent of its funding through these contracts. In addition to receiving this significant financial support, CUCC operated under the administrative and policy purview of the State pursuant to Utah Code section 17A–3–602(1). In plaintiffs' view, these financial and administrative links to the State render the State liable for CUCC's actions.

¶ 20 Plaintiffs also assert that CUCC's integration into the Department of Human Services is evidenced by representations found in Bryan Davis' medical records. For example, a "Deceased Client or Employee Report" for clients of the Department of Human Services was filled out for Davis. The report contained a handwritten notation listing Davis' service provider as CUCC, with the division and locale listed as "Div. of MH/Div. of SA–CUCC, Nephi Office." The report also contained instructions stating that it was to be filled out upon "the death of any client or employee of the Department of Human Services ... and sent to the Office/Division Director." In plaintiffs' view, these references to the Department of Human Services evince the fact that CUCC is actually an instrumentality of the State.

¶ 21 While it is clear that there is a close statutory and operating relationship between the State and CUCC, this relationship does not render the State liable for CUCC's actions. As we discuss *infra* in Part II.A, CUCC is a properly formed interlocal agency; the State played no part in its creation. And the State does not operate CUCC. While the State exercises certain statutory policy-making and administrative control over CUCC (and other state-funded mental health programs), CUCC's operations are directed by its governing board. CUCC's bylaws ex-

pressly grant its governing board a wide range of powers, including the power to "create, maintain and operate all of the facilities, services or programs operated" by CUCC. We therefore reject plaintiffs' contention that CUCC is a state agency and hold that liability for the acts of CUCC's employees and officials lies with CUCC—not with the State.

b. Oral Representations by State Employees Do Not Render the State Liable for the Actions of CUCC

■ ¶ 22 Plaintiffs alternatively argue that dismissal of the State was improper because of representations made by state employees and information posted on the website maintained by the Department of Human Services. Plaintiffs focus especially on statements made by Assistant Attorney General Reed Stringham, who allegedly instructed plaintiffs' counsel to direct plaintiffs' notice of claim to the State Attorney General's office. Stringham did so, however, only after plaintiffs' counsel told him that he "had learned [that CUCC was] a state agency." Plaintiffs also allege that an unnamed employee of the Department of Human Services confirmed that CUCC was a state agency. And plaintiffs claim that they relied on the Department of Human Services' website, which listed CUCC among the "Mental Health offices" of the Department.

¶ 23 Plaintiffs contend that they were entitled to rely on these representations pursuant to the Utah Court of Appeals' decision in *Bischel v. Merritt,* 907 P.2d 275 (Utah Ct. App.1995). They are incorrect. In *Bischel,* the then-controlling version of the Immunity Act was "generally silent about how notice should be filed with the governing body" of a governmental entity. *Id.* at 278. Because of this statutory ambiguity, the plaintiff, who had a claim against Salt Lake County, called the county commission for clarification. *Id.* at 276. The plaintiff was told to direct the notice to a person at the county attorney's office. *Id.* The plaintiff then called that person and received confirmation of the delivery instructions. *Id.*

¶ 24 After the notice was served, the county challenged its validity because it was directed to the county attorney's office rather

than the county commission. *Id.* The court of appeals held that the notice was adequate, recognizing the statutory ambiguity and interpreting the notice requirements "in a manner consistent with the overall purpose" of the Immunity Act. *Id.* at 278 (internal quotation marks omitted). The court of appeals reasoned that the notice was consistent with the purpose of the Immunity Act because it served to notify the entity that actually investigated and settled claims against the county—the county attorney's office. *Id.* at 278–79. In the court's view, the plaintiff complied with the Immunity Act because she followed the instructions provided by "the statute and the County Commission." *Id.* at 279.

¶ 25 This reasoning is simply not applicable here. At the time *Bischel* was decided, the Immunity Act contained a glaring ambiguity. Indeed, the version of the Act at issue in *Bischel* did not "prescribe a specific manner or method for filing notice with the governing body" of a governmental entity. *Id.* at 278. This significant gap in the statute was corrected in 1998. As a result, we rejected the *Bischel* court's rationale in *Greene v. Utah Transit Authority*, 2001 UT 109, ¶ 12, 37 P.3d 1156, where we stated:

> With the 1998 amendment [to the Immunity Act], the legislature has left little open to interpretation and has resolved any potential ambiguities as to whom the Notice must be delivered. . . . Where, as here, the statute is clear, readily available, and easily accessible by counsel, there is no reason to require anything less than strict compliance.

*Id.* ¶ 14.

¶ 26 Furthermore, even if *Bischel* were controlling, it would be unavailing to plaintiffs here. In *Bischel*, the plaintiff received the erroneous delivery instructions from an agent of the entity that was allegedly liable for the plaintiff's injury. Here, however, plaintiffs are attempting to rely on erroneous advice given by employees of the State, an entity separate and distinct from the alleged tortfeasor, CUCC. We are aware of no authority supporting the proposition that the State can be held liable for the acts or omissions of a third-party entity solely on the basis of unauthorized oral representations made by state employees. Such representations by state employees cannot impose liability upon the State where there is none. We therefore affirm the district court's order dismissing plaintiffs' claims against the State.

2.  Juab County

■ ¶ 27 Plaintiffs also appeal the dismissal of Juab County. The basis for their appeal, however, is unclear. We agree with Juab County that plaintiffs have not adequately briefed their appeal of the district court's order dismissing Juab County.

¶ 28 An appellant's brief must comply with rule 24 of the Utah Rules of Appellate Procedure. Under rule 24, the brief must contain "the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on." Utah R.App. P. 24(a)(9). We have on many occasions declined to address inadequately briefed arguments. *See, e.g., Valcarce v. Fitzgerald*, 961 P.2d 305, 313 (Utah 1998) (declining to address an issue on appeal where the appellant's brief lacked any reference to "legal authority in support of his contention"); *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998) (declining to address an issue where the brief's analysis was "so lacking as to shift the burden of research and argument to the reviewing court").

¶ 29 Plaintiffs' briefing on Juab County's dismissal does not comply with rule 24. Indeed, plaintiffs fail to articulate any reason why the district court erred in dismissing Juab County or any theory as to how Juab County could be liable for Davis' death. Although we have occasionally addressed inadequately briefed arguments, we see no reason to do so in this case. *See State v. Gamblin*, 2000 UT 44, ¶ 8, 1 P.3d 1108 (addressing a criminal defendant's inadequately briefed argument "in the interests of justice"). Accordingly, we affirm the district court's dismissal of Juab County.

## II.  CUCC

■ ¶ 30 We now turn to plaintiffs' claim that the district court erred in granting

summary judgment in favor of CUCC and its employees. A court appropriately grants summary judgment only when "there has been a showing that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *J.R. Simplot Co. v. Sales King Int'l, Inc.*, 2000 UT 92, ¶ 13, 17 P.3d 1100 (internal quotation marks omitted). We review the district court's "legal decisions for correctness, giving no deference, and review the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* (internal quotation marks omitted).

¶ 31 We first examine plaintiffs' claim that CUCC is not a governmental entity entitled to the protections of the Immunity Act. Concluding that CUCC is a properly formed interlocal agency covered by the Immunity Act, we then consider and reject plaintiffs' invitation to recognize an exception to our well-established requirement of strict compliance.

### A. CUCC and the Interlocal Cooperation Act

¶ 32 Plaintiffs challenge CUCC's status as an interlocal agency, charging that it was improperly formed under the Interlocal Cooperation Act and thus unable to invoke the protections of the Immunity Act. In considering plaintiffs' challenge, we review the requirements of Utah's Interlocal Cooperation Act and examine CUCC's formation under that statutory scheme. Because we discern no fatal deficiency in CUCC's formation, we affirm the district court's determination that CUCC constitutes an interlocal agency.

¶ 33 The stated purpose of the Interlocal Cooperation Act is "to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities." Utah Code Ann. § 11–13–2 (1990). In furtherance of this purpose, the Interlocal Cooperation Act empowers public agencies, including counties, to "enter into agreements with one another for joint or co-operative action." *Id.* §§ 11–13–5 (1977), 11–13–3(7)(a) (1991).

¶ 34 Counties may create a "separate legal or administrative entity to accomplish the purpose of their joint or cooperative action," which entity is considered a "political subdivision of the state." *Id.* § 11–13–5.5(1) (1991). An agreement creating a separate legal entity must include several items relating to the organization, purpose, and powers of the entity. *Id.* § 11–13–6 (1977).

¶ 35 The legislature has expressly permitted counties to create interlocal agencies in the mental health arena. Under Utah Code section 17A–3–602(1) (1990), counties can "join to provide mental health prevention and treatment services." Counties doing so must follow the formation procedures outlined in the Interlocal Cooperation Act. *Id.* § 17A–3–602(3)(j).

¶ 36 Plaintiffs contend that because the six counties that created CUCC failed to follow these procedures, CUCC is not a separate legal entity entitled to the protections of the Immunity Act. Specifically, plaintiffs highlight the counties' noncompliance with the statutory requirement that participating counties adopt certain resolutions *"before* any [interlocal] agreement may enter into force." *Id.* § 11–13–5 (emphasis added). Apparently, only one of the six counties passed the required resolution before the execution of the 1990 agreement. The remaining five did not do so for several years; the final resolution was passed on January 19, 1993. Plaintiffs contend that this procedural misstep was fatal. We disagree.

¶ 37 While it appears that the counties were not exact in their compliance with this particular requirement, this inexactness was corrected on February 2, 1993, five years before plaintiffs' cause of action accrued. Plaintiffs have articulated no theory as to why this apparent misstep rendered the 1990 agreement irreversibly defective. We therefore reject their contention that this defect was incapable of correction.

¶ 38 Plaintiffs also assert that the content of the 1990 agreement did not conform to the requirements of Utah Code section 11–13–6. Specifically, they assert that the 1990 agreement lacks specification of the "powers delegated" to CUCC, *id.* § 11–13–6(2), language to the effect that CUCC's governing board serves "at the pleasure of the governing bod-

ies of [the six counties]," *id.,* and provisions relating to the financing and budgetary management of CUCC, *id.* § 11–13–6(4).

¶ 39 Plaintiffs' argument is simply not supported by the evidence. Our review of the 1990 agreement and CUCC's bylaws, which were incorporated by reference in the agreement, reveals that these documents conform to the applicable requirements. The 1990 agreement clearly establishes a "legal and administrative entity" that is empowered to "operat[e] and maintain[ ] ... a mental health/alcohol and drug service program for the benefit of the residents of the [six counties]." It also establishes a governing board, which is given extensive management and budgetary powers under Article V of CUCC's bylaws. In addition, the agreement explains that the six counties "agree to financially support" CUCC. Finally, the bylaws establish that the members of the governing board serve "pursuant to the appointment of the county appointing such person." Because our review of the 1990 agreement and the bylaws establishes compliance with the statutory requirements, we have no basis on which to disturb the district court's conclusion that CUCC is a properly formed interlocal agency and was therefore entitled to a notice of claim under the Immunity Act.

*B. The Requirement of Strict Compliance*

¶ 40 We now turn to plaintiffs' claim that the district court erred in applying the notice requirements of the Immunity Act. We review those requirements in the context of our case law and reaffirm our well-established rule of strict compliance. We then consider and reject plaintiffs' request that we excuse their noncompliance and recognize an exception to those requirements.

¶ 41 The Immunity Act bars claims against political subdivisions and their employees "unless notice of claim is filed with the governing body of the political subdivision ... within one year after the claim arises." Utah Code Ann. § 63–30–13 (1998). The Immunity Act requires, in relevant part, that the claim be "directed and delivered to ... a member of the governing board, the executive director, or executive secretary." *Id.* § 63–30–11(3)(b)(ii)(F) (1998). This no-

tice requirement is jurisdictional. *Greene v. Utah Transit Auth.,* 2001 UT 109, ¶¶ 15–16, 37 P.3d 1156.

¶ 42 We consistently have interpreted the Immunity Act to require strict compliance by plaintiffs. *See, e.g., Gurule v. Salt Lake County,* 2003 UT 25, ¶ 5, 69 P.3d 1287; *Greene,* 2001 UT 109, ¶ 14, 37 P.3d 1156; *Rushton v. Salt Lake County,* 1999 UT 36, ¶ 19, 977 P.2d 1201. In *Gallegos v. Midvale City,* 27 Utah 2d 27, 492 P.2d 1335, 1336–37 (1972), we explained that the "allowance of a claim against [a governmental entity] is a statutorily created exception to the Doctrine of Sovereign Immunity. Inasmuch as the maintenance of such a cause of action derives from such statutory authority, a prerequisite thereto is meeting the conditions prescribed in the statute." The statutory right to sue a governmental entity "may be circumscribed by any conditions that the Legislature may see fit to impose," and compliance with those conditions is an "indispensable prerequisite" in suits against governmental entities. *Artukovich v. Astendorf,* 21 Cal.2d 329, 131 P.2d 831, 833 (1942). The requirement of strict compliance, therefore, is a recognition of the government's sovereign immunity and its right to dictate the terms and conditions of its waiver of that immunity.

¶ 43 Plaintiffs concede that they failed to provide CUCC with the notice required by the Immunity Act. Under section 63–30–11(3)(b)(ii)(F), plaintiffs were required to deliver a notice of claim to a member of CUCC's governing board, its executive director, or its executive secretary. Plaintiffs instead delivered the notice to the State Attorney General's office and the Juab County Clerk. They ask us to consider the confusing circumstances of their situation and recognize an exception to the rule of strict compliance. We decline to do so.

¶ 44 As we stated in *Gurule,* we have allowed for "less than strict compliance [only] in cases which depended upon ambiguities in the [Immunity] Act; ambiguities clarified by the 1998 amendments." 2003 UT 25, ¶ 7, 69 P.3d 1287; *see, e.g., Larson v. Park City Mun. Corp.,* 955 P.2d 343, 345–46 (Utah

1998) (upholding the validity of a notice sent to a city recorder where the then-controlling version of the Immunity Act failed to state "how or in what manner a notice of claim should be filed with [a] city council"). Barring statutory ambiguity, we have consistently declined to relax the requirements of the Immunity Act.

¶ 45 For example, in *Greene,* we refused to create an exception to the strict compliance rule where a claims adjuster employed by a state entity allegedly misdirected the plaintiff as to where to send the requisite notice. 2001 UT 109, ¶ 17, 37 P.3d 1156. Though we expressed concern about the "intentionally misleading behavior" alleged by the plaintiff, *id.* ¶ 19, we nevertheless affirmed the dismissal of the case:

> Even assuming [the claims adjuster] made the statements [the plaintiff] alleges he made, his delivery instructions cannot override the requirements set by the legislature. Because [the plaintiff] failed to strictly comply with the Immunity Act, the district court lacked subject matter jurisdiction over her claim.

*Id.* ¶ 17.

¶ 46 We understand that claimants may face byzantine and confusing bureaucracy when dealing with governmental entities. Indeed, government employees and officials may even intentionally mislead plaintiffs in some cases, as was alleged in *Greene.* Certainly, plaintiffs and their attorney in this case faced a difficult task in navigating the communication channels of an interlocal agency that serves six counties and receives substantial funding and supervision from the State. Jurisdiction, however, does not hinge on the difficulty of that task or the earnestness of plaintiffs' efforts. Jurisdiction instead springs when a claimant has effected full compliance with the Immunity Act. Barring statutory ambiguity, "we will not disturb explicit legislative requirements" and abrogate the government's sovereign immunity. *Id.* ¶ 15.

¶ 47 Plaintiffs point to no statutory ambiguity that could serve to excuse them from strict compliance in this case. As we noted in *Gurule,* the 1998 amendments to the Immunity Act resolved the ambiguities at issue

in *Larson v. Park City Municipal Corp.,* 955 P.2d 343 (Utah 1998), and *Bischel v. Merritt,* 907 P.2d 275 (Utah Ct.App.1995). The controlling version of the Immunity Act unambiguously instructed plaintiffs and their attorney to serve the requisite notice of claim on a member of CUCC's governing board, its executive director, or its executive secretary. *See* Utah Code Ann. § 63–30–11(3)(b)(ii)(F).

¶ 48 Plaintiffs must exercise the diligence necessary to effect strict compliance with the Immunity Act. And the plaintiffs in this case failed to do so. After conducting an initial investigation on December 23, 1998, plaintiffs' attorney apparently did nothing until November 22, 1999—one day before the limitations period expired. On that date, plaintiffs' attorney spoke with an unidentified employee of the Division of Mental Health, called Assistant Attorney General Reed Stringham, and finalized the notice of claim. What plaintiffs' attorney never did—and had one year to do—was contact an identified person of authority at CUCC. Instead, he spoke with unidentified employees of CUCC and the Division of Mental Health and relied on inferences and assumptions in directing the notice. Reliance on inferences and assumptions does not constitute due diligence. Because plaintiffs failed to exercise due diligence, we decline to recognize an exception to the requirement of strict compliance.

¶ 49 We reaffirm our statement in *Greene* that "[w]here, as here, the statute is clear, readily available, and easily accessible by counsel, there is no reason to require anything less than strict compliance." 2001 UT 109, ¶ 14, 37 P.3d 1156. Because plaintiffs did not strictly comply with the Immunity Act by directing a notice of claim to CUCC, we affirm the district court's grant of summary judgment in favor of CUCC.

**CONCLUSION**

¶ 50 We affirm the district court's dismissal of the State and Juab County for failure to state a claim. We also affirm the district court's grant of summary judgment in favor of CUCC and its employees and reaffirm our oft-repeated instruction that claimants must strictly comply with the Immunity Act when

they bring claims that trigger its protections. Because CUCC is an interlocal agency that may invoke those protections, plaintiffs were required to strictly comply with the Immunity Act. They failed to do so and are therefore precluded from bringing suit against CUCC and its employees.

¶ 51 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice NEHRING, and Judge LINDBERG concur in Justice PARRISH's opinion.

¶ 52 Having disqualified himself, Justice DURRANT does not participate herein; District Judge DENISE P. LINDBERG sat.