2018 UT App 42

## THE UTAH COURT OF APPEALS

WADE S. WINEGAR AND SANDRA WINEGAR,
Appellants,
*v.*
SPRINGVILLE CITY, BILL CHILD, AND JASON RIDING,
Appellees.

Opinion
No. 20160364-CA
Filed March 22, 2018

Fourth District Court, Provo Department
The Honorable Claudia Laycock
No. 070401317

Wade S. Winegar, Attorney for Appellants

Robert C. Keller and Timothy J. Bywater, Attorneys
for Appellees

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES KATE A. TOOMEY and RYAN M. HARRIS concurred.

CHRISTIANSEN, Judge:

¶1     Wade S. Winegar and Sandra Winegar appeal the district
court's grant of summary judgment in favor of Springville City
(the City), Bill Child, and Jason Riding. We affirm.

BACKGROUND

¶2     The Winegars owned vacant property along Hobble
Creek in Springville, Utah. In May 2005, without the Winegars'
knowledge or permission, the City moved heavy equipment
across the Winegars' property as part of an effort to clear an up-
stream obstruction in the creek, damaging the Winegars'
property.

¶3      Approximately eight months later, on January 27, 2006, the Winegars filed a notice of claim for damage to their property with the Springville City Clerk. The clerk transferred the notice of claim to the City Attorney, who began communicating with the Winegars about their claim.

¶4      On March 20, an entity named Utah Risk Management Mutual Association (URMMA) sent a letter to the Winegars, which read:

> Our investigation into the claim you have made against Springville City for damage to your landscaping and property . . . is now complete.
>
> Our investigation indicates that Springville City would not be held legally liable for any damages you may have sustained. The City has an easement on the property which allows [it] to enter the creek bed. [It] also [has] authority to take measures to clean out and maintain the creek bed to prevent flooding that might damage other property downstream.
>
> Because the City would not be held liable, we must respectfully decline to make any voluntary payments on this claim.

The letter was signed by Lyle Kunz, a claims adjuster, and a copy was sent to the City Attorney.

¶5      A few weeks later, on April 9, Mr. Winegar sent a letter to the City Attorney, purportedly following up on a telephone conversation from the previous Friday, April 7. Mr. Winegar indicated that he needed to amend his claim to include the names of the individual employees "involved in cutting trees on the subject property" and "the names of all those involved in the decision-making process, direction and supervision of this

project." According to the letter, the City Attorney had advised the Winegars to request those names in writing.

¶6     URMMA responded to the Winegars' letter on April 20:

> Your letter dated April 9, 2006, addressed to [the City Attorney], has been referred to us for a response . . . .
>
> Your claim was denied on March 20, 2006. We are not prepared to continue negotiations with you by providing the information you have requested in your letter. If you [choose] to not accept our denial and if you [choose] to move this claim to the next step, your attorney can gather this information through the discovery process of the court [system].

¶7     On April 24, Mr. Winegar sent a letter to URMMA and the City Attorney, in which he acknowledged URMMA's "outright denial of the claim." Nevertheless, Mr. Winegar reiterated that he needed to include the employees' names on the notice of claim and recounted his April 7 conversation with the City Attorney: "In our conversation on April 7, [the City Attorney] and I discussed what would happen if these names were not provided. We concluded the only alternative was for me to amend my claim . . . to include the unidentified employees . . . ." Mr. Winegar stated that, by means of his letter, he was "amend[ing the] claim to include not only Springville City but all the unidentified employees who participated in any aspect of the work done at the above listed property, participated in the decision-making to do such work[,] or carried trees or timber off the property." He also requested that URMMA or the City Attorney notify him immediately "[i]f you believe I must follow a different process to amend my claim."

¶8    URMMA responded to the Winegars' April 24 letter on May 10:

> A review of [the April 24] letter indicates that it would not qualify as an amended Notice of Claim since it is not directed to the right department within the City.
>
> Even if it did qualify as an amended Notice of Claim, we do not believe that there is any significant additional information that would cause us to change our decision on the City's liability. We must therefore stand on the original denial which was conveyed to you in our letter dated March 20, 2006.

¶9    On April 24, 2007, the Winegars filed a complaint against the City in district court. The City moved for summary judgment, asserting that the Winegars' April 24, 2007 complaint was untimely because the Governmental Immunity Act of Utah (the Act) requires a claimant to pursue a civil action within one year after denial of a claim, and the City had denied the Winegars' claim on March 20, 2006. *See* Utah Code Ann. § 63G-7-403(2) (LexisNexis 2016).[1] The district court granted the City's motion for summary judgment and dismissed the case with prejudice. The Winegars appealed.

¶10    In *Winegar v. Springville City* (*Winegar I*), 2014 UT App 9, 319 P.3d 1, this court vacated the entry of summary judgment and remanded the case to the district court. *Id.* ¶ 1. There, the Winegars argued that URMMA's March 20 letter was not "actually a denial of their claim because the letter did not

---

1. The parties cite the 2016 version of the Act, which was the version in effect at the time they filed their briefs on appeal. We follow suit.

explicitly say the claim was denied but rather stated that URMMA 'must respectfully decline to make any voluntary payments on [the] claim.'" *Id.* ¶ 15 (alteration in original). The Winegars also argued that under the Act, only the governmental entity or its insurance carrier can approve or deny a claim, *see* Utah Code Ann. § 63G-7-403(1)(a), and that "URMMA, not the City, wrote the March 20 letter and the letter did not identify URMMA as the City's insurer," *Winegar I*, 2014 UT App 9, ¶ 15. This court noted that the March 20 letter was on URMMA letterhead and signed only by a "claims adjuster." *Id.* ¶ 20. Observing that the City had failed to introduce any evidence establishing that URMMA was its insurer when URMMA sent the March 20 letter to the Winegars, this court concluded that the City could not establish, for purposes of summary judgment, that it had denied the Winegars' claim in the March 20 letter. *Id.*

¶11 On remand, the parties engaged in discovery for the first time and took the depositions of, among others, the City Attorney and Mr. Winegar. Mr. Winegar testified in his deposition that he "had been working exclusively with [the City Attorney], and out of the blue got a letter from Lyle Kunz." He testified that he had "assumed [Lyle Kunz] was an adjuster" and that "he had some involvement in the process." During his deposition, the City Attorney testified that Lyle Kunz "was a claims adjuster for URMMA, who was our insurer at the time" of the March 20 letter. The City Attorney considered the March 20 letter to be a denial of the Winegars' claim. In May 2015, the Winegars amended their complaint to include claims against Bill Child and Jason Riding, two City employees who were involved in clearing the obstruction in 2005.

¶12 The City, Child, and Riding (collectively, Defendants) moved for summary judgment on several grounds. First, Defendants asserted that the Winegars had failed to strictly comply with the Act. Specifically, Defendants asserted (1) that the City had denied the Winegars' claim on March 20, 2006, and

that the Winegars had failed to initiate their district court action within one year of that denial; (2) that the Winegars' notice of claim failed to "both identify the name of the individual employees and describe the nature of [the] claim[s] asserted against the individual employee[s]"; and (3) that the Winegars' claims against Child and Riding were untimely, as those claims were first asserted in May 2015 in the Winegars' amended complaint. According to Defendants, these deficiencies deprived the district court of subject matter jurisdiction. Next, Defendants asserted that Child and Riding were immune from liability because they were acting within the course and scope of their employment when they cleared the obstruction. Lastly, Defendants asserted that, under the Act, the City was immune from the Winegars' intentional trespass claims and from suits arising out of the management of its flood waters and the repair and operation of its storm water system. Defendants submitted several exhibits in support of their motion, including transcripts of the City Attorney's and Mr. Winegar's depositions.

¶13 After a hearing, the district court concluded that the Winegars' "failure to file their action within the one-year statutory time period deprive[d the] court of subject matter jurisdiction." The court noted that it "now ha[d] sufficient undisputed evidence before it to determine that . . . URMMA was the insurer of the [City]" in March 2006 and all other relevant time periods, and that Mr. Winegar had "acknowledged that he assumed that the letter he received 'out of the blue' from Kunz meant that Kunz was an insurance adjuster." The court then determined that the Winegars' claim had been denied on March 20, 2006, because the March 20 letter was "sufficiently clear" and could "only be construed as a denial of claim." The court observed that Kunz had "reiterated the denial of claim in letters dated April 20, 2006 and May 10, 2006." The court also noted that, "[e]ven if [it] were to conclude that the March 20, 2006 letter 'used vague and non-statutory language,'" the April 20, 2006 letter, which was sent more than one year before the

complaint was filed, "cleared up any possible ambiguity" based on Kunz's statement, "Your claim was denied on March 20, 2006."

¶14 Additionally, the court concluded that the Winegars' April 24 letter was not an amended notice of claim for three reasons: (1) the letter was delivered to the wrong City department, as it "was served on the city attorney . . . and not on the city clerk"; (2) the Act "does not provide for an amendment of claim"; and (3) "there [was] no evidence before the court that the [City] stipulated to allow the [Winegars] to amend their notice of claim or to reset the statutory filing requirements of the [Act]." The court observed that after the Winegars sent the April 24 letter, URMMA sent the May 10 letter notifying them that "the purported amended notice of claim/letter was sent to the wrong department, that it was not an amended notice of claim, and that the claim had originally been denied on March 20, 2006." The court also rejected the Winegars' argument that the City should be "estopped from bringing forth defenses under the [Act]," observing that URMMA had notified the Winegars on March 20, April 20, and May 10 that their claim had been denied and that the City had "never made a written statement which was inconsistent with the defenses now asserted."

¶15 Regarding the Winegars' claims against Child and Riding individually, the court concluded that (1) the Winegars had "failed to provide sufficient information in their notice of claim to reasonably alert [Defendants] that the [Winegars] were suing any City employees individually, and certainly not Child and Riding individually," and (2) the Winegars' "purported amended notice of claim letter from April 24, 2006 fails to identify the employees and contains no allegations that the employees' acts constituted malicious or fraudulent conduct." *See* Utah Code Ann. § 63G-7-401(3)(a)(iv) (LexisNexis 2016). The court also concluded that the Winegars' claims against Child and Riding failed because their May 2015 amended complaint

"added claims not included in the original notice of claim." In addition, the court determined that both employees' conduct was within the scope of their employment and that "[t]he undisputed evidence demonstrates that [they] were not acting willfully or maliciously outside the scope of their employment in an effort to injure the [Winegars]." Lastly, the court concluded that the City had immunity "from claims arising from intentional trespass" and "from suit for actions relating to the management of the City's flood water and the maintenance and operation of its storm water system."

¶16 The district court granted Defendants' motion for summary judgment and dismissed the case. The Winegars appeal.

ISSUE AND STANDARD OF REVIEW

¶17 The Winegars contend that the district court erred in granting summary judgment in favor of Defendants. We review the district court's "legal conclusions and ultimate grant or denial of summary judgment for correctness." *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 9, 284 P.3d 630 (citation and internal quotation marks omitted). "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law," viewing the facts and all reasonable inferences drawn therefrom in a light most favorable to the nonmoving party. *Id.*

ANALYSIS

¶18 The Utah Supreme Court has "consistently and uniformly held that suit may not be brought against the state or its subdivisions unless the requirements of [the Act] are strictly followed." *Wheeler v. McPherson*, 2002 UT 16, ¶ 11, 40 P.3d 632 (citation and internal quotation marks omitted). The Act

mandates that "[a]ny person having a claim against a governmental entity . . . shall file a written notice of claim with the entity before maintaining an action." Utah Code Ann. § 63G-7-401(2) (LexisNexis 2016). The notice of claim must be filed within one year after the claim arises, *id.* § 63G-7-402, and must contain (i) "a brief statement of the facts"; (ii) "the nature of the claim asserted"; (iii) "the damages incurred by the claimant so far as they are known"; and (iv) "if the claim is being pursued against a governmental employee individually . . . , the name of the employee," *id.* § 63G-7-401(3)(a).

¶19 The Act further provides that "[w]ithin 60 days of the filing of a notice of claim, the governmental entity or its insurance carrier shall inform the claimant in writing that the claim has either been approved or denied." *Id.* § 63G-7-403(1)(a). "A claim is considered to be denied if, at the end of the 60-day period, the governmental entity or its insurance carrier has failed to approve or deny the claim." *Id.* § 63G-7-403(1)(b). Once a claim is denied, "a claimant may institute an action in the district court against the governmental entity or an employee of the entity." *Id.* § 63G-7-403(2)(a). Importantly, "a claimant shall commence the action within one year after denial of the claim or within one year after the denial period . . . has expired." *Id.* § 63G-7-403(2)(b).

¶20 At oral argument before this court, the Winegars conceded that they did not strictly comply with the Act's requirement that they file suit within one year of the denial of their claim. *See id.* They also acknowledged in their briefing that their notice of claim failed to include the names of the City employees "who committed damage to the Winegars' property." Nevertheless, the Winegars maintain that the City should be estopped from seeking dismissal of their complaint. They also contend that the City failed to strictly comply with the terms of the Act.

## I. Estoppel

¶21    The Winegars contend that the City made several "intentional misrepresentations" and should therefore be estopped from asserting the one-year limitations period for filing a complaint, *see* Utah Code Ann. § 63G-7-403(2)(b), and from seeking dismissal of the case. Specifically, they assert that the City (1) repeatedly withheld "information needed to properly file a claim which then created the need for an amendment"; (2) agreed to an amended notice of claim "to fix their withholding of information [and] then repudiat[ed] the agreement"; and (3) misinformed the Winegars that the deemed-denied period was 90 days rather than the statutory 60-day period. According to the Winegars, the City should be estopped from benefitting from this misconduct.

¶22    "There are three elements to estoppel: (1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act." *Monarrez v. Utah Dep't of Transp.*, 2016 UT 10, ¶ 35, 368 P.3d 846 (citation and internal quotation marks omitted). "[T]he usual rules of estoppel do not apply against the government, however, and courts must be cautious in applying equitable estoppel against the [government]." *Id.* (first alteration in original) (citations and internal quotation marks omitted). "Accordingly, estoppel is applied against the [government] only if necessary to prevent manifest injustice, and the exercise of governmental powers will not be impaired as a result." *Id.* (citation and internal quotation marks omitted).

¶23    In *Monarrez*, our supreme court noted that in the context of the Act, "no published case [had] directly addressed what kind of statement may estop the government entity from asserting that a claim was untimely," but that the court had

"insisted on strict compliance with the terms of [the Act] even in the face of potentially intentional misrepresentations about how to comply with the notice provisions of [the Act]." *Id.* ¶ 37. "Thus, in order to estop [a government entity] from asserting [the Act's] one year limitations period as a defense, there must be a specific, written representation directly related to that issue, such as a statement that [the complainant] had satisfied [the Act's] requirements or that the government would not assert the defense in litigation." *Id.*; *see also Wheeler v. McPherson*, 2002 UT 16, ¶ 18, 40 P.3d 632 ("[G]overnmental entities are estopped from raising the Immunity Act as a defense where their statements induce plaintiffs into delay[ing] filing [an] action, or where such statements mislead plaintiffs into filing [a] notice of claim incorrectly." (second and third alterations in original) (citation and internal quotation marks omitted)).

A.      Withholding Information

¶24    The Winegars first assert that the names of the City employees "who committed damage to [the] Winegars' property" "were needed to properly file a notice of claim" and that the City "refused to disclose the names of these employees in order to file the notice of claim." This argument is inadequately briefed.

¶25    Defendants correctly observe that the Winegars have not cited any "evidence in the record of any occasion during the more than eight months after May 3 or 4, 2005, when their claims arose, and prior to January 27, 2006, when they served their notice, where the Winegars made even the slightest effort to learn the names of [the employees]." *See generally Davis v. Central Utah Counseling Center*, 2006 UT 52, ¶ 48, 147 P.3d 390 ("Plaintiffs must exercise the diligence necessary to effect strict compliance with the Immunity Act."). Additionally, the Winegars have not cited any record evidence demonstrating that the City refused to disclose this information *before* the Winegars filed their notice of

claim. Indeed, this section of the Winegars' brief does not contain a single citation to the record. *See* Utah R. App. P. 24(a)(8) (requiring an appellant's brief to "explain, with reasoned analysis supported by citations to legal authority *and the record*, why the party should prevail on appeal" (emphasis added)). Because the Winegars have not adequately briefed this argument, they have failed to carry their burden of persuasion on appeal.

B.      Agreement to Amend

¶26    The Winegars next assert that the City Attorney agreed to allow them to amend their notice of claim "to remedy the [City's] refusal to give individual names to include on it," that the City then repudiated the agreement, and that the City "should be estopped from benefitting from [its] misconduct."

¶27    Before we address the merits of the Winegars' argument, we make two observations. First, we see nothing in the Act that permits the amendment of a notice of claim, and the Winegars have not directed us to any such provision. Second, the Winegars' assertion that the City Attorney agreed to an amended notice of claim suffers from a lack of evidentiary support. The only evidence the Winegars point to is Mr. Winegar's April 24 letter, in which he recounted his version of the April 7 telephone conversation with the City Attorney. According to the April 24 letter, Mr. Winegar and the City Attorney had "discussed what would happen if [the names of the individual City employees] were not provided," and they "concluded the only alternative was for [the Winegars] to amend [their] claim." Mr. Winegar later purported to "amend [his] claim to include not only [the City] but all the unidentified employees who participated in any aspect of the work done at [the Winegars'] property." However, when the City Attorney was asked in his deposition whether he "told Mr. Winegar to go ahead and file an amended claim or that [he] would reconsider

the denial," the City Attorney replied, "I don't believe I would have done that. Mr. Kunz was handling the claim for us." He also testified that he considered URMMA's March 20 letter to be a denial of the Winegars' claim. Based on the foregoing, we are not convinced that the City Attorney legally could, or did, agree to an amended notice of claim.

¶28    But even if the City Attorney did agree to an amended notice of claim, there is simply no "specific, written representation" from the City that the Winegars had "satisfied [the Act's] requirements," that the City would not later assert the one-year limitations period as a defense, or that the Winegars' purported amended notice of claim somehow restarted the year-to-file period. *See Monarrez v. Utah Dep't of Transp.*, 2016 UT 10, ¶ 37, 368 P.3d 846. Indeed, the record demonstrates that upon receiving the Winegars' April 24 letter, URMMA sent the May 10 letter notifying the Winegars that their April 24 letter would not qualify as an amended notice of claim, because it was delivered to the wrong department within the City.[2] URMMA further explained that even if the April 24 letter qualified as an amended notice of claim, "we do not believe that there is any significant additional information that would cause us to change our decision on the City's liability. We must therefore stand on the original denial which was conveyed to you in our letter dated March 20, 2006." Nothing in the May 10 letter can reasonably be read to mean that the year-to-file period had been restarted, that

---

2. The Act requires a notice of claim to be "directed and delivered" to the office of "the city or town clerk, when the claim is against an incorporated city or town." Utah Code Ann. § 63G-7-401(3)(b)(ii)(A) (LexisNexis 2016). The Winegars sent their purported amended notice of claim, i.e., the April 24 letter, to the City Attorney, and we therefore agree with the district court that the April 24 letter was not an amended notice of claim as it "was not properly served on the city clerk as required." *See id.*

the Winegars had satisfied the Act's requirements, or that the City would not later assert a limitations defense. *See id.* Accordingly, we conclude that the Winegars' estoppel claim on this point fails.

¶29　In a separate but related argument, the Winegars contend that their complaint against Child and Riding "should not have been dismissed as the notice of claim and amended notice of claim were sufficient to include them and maintain the action against them." We are not persuaded.

¶30　The Winegars first identified Child and Riding in their May 2015 amended complaint (filed after *Winegar I*) and alleged, for the first time, that Child and Riding had acted outside the scope of their employment and violated state and federal law. The Winegars asserted that Defendants "knew or should have known that altering or excavating in a streambed, stream bank or waterway requires permission from the U.S. Army Corp[s] of Engineers or the State Department of Water Rights, which they failed to obtain." The Winegars also sought punitive and treble damages from Child and Riding for willful misconduct and injuries to trees.

¶31　The district court determined that the Winegars failed to provide sufficient information in their notice of claim that they would be suing Child and Riding ("[o]r any other John or Jane Does") individually "for acting outside the scope of their employment or by violating state or federal statutes." As the court correctly observed, the notice of claim "makes no mention of any alleged misconduct of any individual city employee and contains no reference to any possible violation of a state or federal statute." The court also noted that, in their amended complaint, the Winegars "now seek to impose liability on Child and Riding for failing to obtain a permit from either the U.S. Army Corp[s] of Engineers . . . or the State Department of Water [R]ights before cutting trees or altering the streambed."

Observing that the Winegars' claims against Child and Riding were not stated in the notice of claim filed in January 2006, and that these were "new claims against new defendants and not merely an amplification or expansion of existing claims," the district court determined that the claims against Child and Riding individually must be dismissed. *See Yearsley v. Jensen*, 798 P.2d 1127, 1129 (Utah 1990) (providing that "[t]here must be enough specificity in the notice [of claim] to inform as to the nature of the claim so that the defendant can appraise its potential liability" and rejecting an amended complaint that "presented a new claim charging new and different misconduct from the claim made in the notice"). We agree.

¶32   Although the Winegars assert that "the original notice of claim describes the conduct, even though the Winegars could not yet state names or specific detail due to the City's withholding that information," as previously discussed, *supra* ¶ 25, the Winegars have not pointed to any evidence demonstrating that they sought Child's and Riding's names (or that the City withheld any information) *before* they filed their notice of claim in January 2006. Nothing in the Winegars' notice of claim would have generally alerted the City that the Winegars were asserting claims against any individual City employees or, more specifically, that the Winegars were claiming individual employees had acted outside the scope of their employment or violated state and federal law. Accordingly, we affirm the district court's dismissal of the Winegars' claims against Child and Riding individually.

C.    Incorrect Notice-of-Claim Form

¶33   The Winegars next assert that the City's notice-of-claim form incorrectly informed them that the deemed-denial period was 90 days rather than the statutory 60 days and that "[a] governmental entity should not be able to misinform potential

claimants of certain time limits and then later use this misunderstanding to ask the court to dismiss the case."

¶34    The Act provides that "[w]ithin 60 days of the filing of a notice of claim, the governmental entity or its insurance carrier shall inform the claimant in writing that the claim has either been approved or denied." Utah Code Ann. § 63G-7-403(1)(a) (LexisNexis 2016). If a claimant receives no response to the notice of claim from the governmental entity or its insurance carrier after 60 days, the claim is deemed denied. *Id.* § 63G-7-403(1)(b). After a claim is denied or deemed denied, a claimant has one year in which to file a complaint in district court. *Id.* § 63G-7-403(2).

¶35    When the Winegars filed their notice of claim on January 27, 2006, the City's notice-of-claim form incorrectly stated: "UNDER STATE LAW, THE CITY HAS 90 DAYS IN WHICH TO RESPOND TO A CLAIM. IF THE CITY DOES NOT RESPOND WITHIN 90 DAYS, THE CLAIM IS DEEMED DENIED."[3] The Winegars assert that, based on the City's notice-of-claim form, they "worked under the assumption [that] they had 90 days"—until April 28, 2006—"before the claim would be deemed denied if the City did not respond" and that they had to "file suit within a year of that date."[4] This argument depends upon a determination that the Winegars' claim was not denied before April 28, 2006; i.e., that the March 20, 2006 letter did not amount to a denial of the Winegars' claim.

---

3. The City's notice-of-claim form appears to have since been updated to include the correct 60-day denial period. *See* Springville City, Notice of Claim Form, *available at* https://perma.cc/ZZM7-JETT.

4. The Winegars filed suit on April 24, 2007.

¶36 The district court determined that the Winegars' claim was denied on March 20, 2006, because the March 20 letter "was sufficiently clear" and "could only be construed as a denial of claim."[5] We agree. The March 20 letter stated:

> Our investigation into the claim you have made against Springville City for damage to your landscaping and property . . . is now complete.
>
> Our investigation indicates that Springville City would not be held legally liable for any damages you may have sustained. The City has an easement on the property which allows [it] to enter the creek bed. [It] also ha[s] authority to take measures to clean out and maintain the creek bed to prevent flooding that might damage other property downstream.
>
> Because the City would not be held liable, we must respectfully decline to make any voluntary payments on this claim.

Although the March 20 letter did not specifically use the words "deny" or "denied," *see infra* ¶ 41, it referred to the Winegars' claim against the City, stated that the City "would not be held liable" for their alleged damages, and declined to make any voluntary payments. When read as a whole, we conclude that

---

5. As previously discussed, on remand from *Winegar I*, the parties conducted discovery and took depositions. The City Attorney testified in his deposition that "Lyle Kunz was a claims adjuster for URMMA, who was [the City's] insurer at the time," and the district court concluded that it "now [had] sufficient undisputed evidence before it to determine that . . . URMMA was the insurer of [the City]" in March 2006 "and the other relevant time periods for this case."

the only reasonable interpretation of the March 20 letter is as a denial of the Winegars' claim. Certainly, nothing in the March 20 letter can be read as approving the Winegars' claim.

¶37 In any event, even if we were to conclude that the March 20 letter was ambiguous regarding the status of the Winegars' claim, URMMA's April 20 letter made it clear that the claim had been denied on March 20. The April 20 letter specifically stated, "Your claim was denied on March 20, 2006," and informed the Winegars that URMMA would not continue negotiations with them. Accordingly, we agree with the district court that "[i]f there were any doubts about the status of the Winegars' claim against the City, [the April 20] letter eliminated any such doubts." We also agree with the district court that, "[e]ven if the Winegars had used this later date (April 20, 2006) as the date when the City made its intentions clear," the Winegars' April 24, 2007 complaint "was still filed four days too late."

¶38 "[A] denial—whether by operation of law or by written notice—can occur only *once* . . . . Once a claim has been denied by one mechanism, it cannot be denied again by the other." *Monarrez v. Utah Dep't of Transp.*, 2016 UT 10, ¶ 16, 368 P.3d 846. Here, we conclude that the City denied the Winegars' claim by written notice on March 20, 2006, and thus, there was no deemed denial in this case. *See id.* ("[A] deemed denial occurs only if the government fails to issue a written denial . . . ."). Consequently, the fact that the City's notice-of-claim form incorrectly "informed [the Winegars] that the deemed denied period was 90 days rather than 60 days," while unfortunate, is ultimately immaterial. Given the City's March 20 written denial, the Winegars could not reasonably rely on the 90-day deemed-denial period listed on the City's notice-of-claim form in filing their lawsuit. The Winegars were required to file their complaint by March 20, 2007, and because they filed their complaint on April 24, 2007, their suit was untimely. Based on the foregoing,

we reject the Winegars' argument that the City should be estopped from asserting the one-year limitations defense.

## II. Strict Compliance

¶39    The Winegars next contend that the district court "erred in not requiring [the City] to 'strictly comply' with [the Act] rather than accepting [its] 'substantial compliance' thus allowing [the City] to introduce further confusion to claimants attempting to comply with [the Act]."

¶40    The Winegars observe that the Act mandates that "[w]ithin 60 days of the filing of a notice of claim, the governmental entity or its insurance carrier shall inform the claimant in writing that the claim has either been approved or denied." Utah Code Ann. § 63G-7-403(1)(a) (LexisNexis 2016). According to the Winegars, the City did not strictly comply with this section of the Act in two ways.

¶41    First, the Winegars assert that the Act requires "a city (or its insurer) specifically state a claim is 'denied'" and that in the March 20 letter, "URMMA used the vague and non-statutory language that it will not '. . . make any voluntary payments.'" We are not persuaded. The Winegars fail to cite any authority to support their assertion that the Act requires the use of specific words of denial, *see* Utah R. App. P. 24(a)(8), and our review of the Act does not reveal any such requirement. Moreover, as previously discussed, the March 20, 2006 letter can be reasonably construed only as a denial of the Winegars' claim, and any possible ambiguity in the March 20 letter was resolved by the April 20 letter confirming that their claim had been denied on March 20.

¶42    Second, the Winegars assert that the City failed to strictly comply with the Act because "[a]n insurer (or City) has the obligation to use proper statutory language and to identify itself as the insurer" and "the identity of URMMA was only a guess

when the letter was written." As previously discussed, on remand from *Winegar I*, the City conclusively established that URMMA was its insurer during March 2006 (and all other relevant time periods). Mr. Winegar also acknowledged during his deposition that he had assumed Lyle Kunz was an insurance adjustor and that "[Kunz] had some involvement in the process." Although it is unfortunate that URMMA's status as the City's insurer was not readily discernible from the March 20 letter, the Winegars have not cited any authority demonstrating that the Act requires a governmental entity's insurance carrier to identify itself as such when approving or denying a claim, *see id.*, and again, our review of the Act reveals no such requirement.

CONCLUSION

¶43    We conclude that estoppel is not warranted under the circumstances of this case. We further conclude that the Act does not require strict compliance from the City in the manner that the Winegars suggest. Accordingly, we affirm the district court's grant of summary judgment in favor of Defendants.

———————