*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 50**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

GEOMETWATCH CORPORATION,
*Plaintiffs-Appellant,*

*v.*

UTAH STATE UNIVERSITY RESEARCH FOUNDATION, ROBERT T.
BEHUNIN, CURTIS ROBERTS, UTAH STATE UNIVERSITY ADVANCED
WEATHER SYSTEMS FOUNDATION, and SCOTT JENSEN,
*Defendants-Appellees.*

No. 20170264
Filed September 12, 2018

On Certification from the
United States District Court for the District of Utah
The Honorable Jill N. Parrish
Case No. 1:14-cv-00060

Attorneys:

James E. Magleby, Peggy A. Tomsic, Adam Alba, Salt Lake City,
for appellant

Sean D. Reyes, Att'y Gen., Tyler R. Green, Solic. Gen., Stanford E.
Purser, Deputy Solic. Gen., Peggy E. Stone, Asst. Solic. Gen., Salt
Lake City, for appellees Utah State University Research
Foundation, Robert T. Behunin, and Curtis Roberts

Arthur B. Berger, Beth J. Ranschau, Ryan B. Bell,
Salt Lake City, for appellees Utah State University
Advanced Weather Systems Foundation and Scott Jensen

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PETERSEN, and JUDGE HAGEN joined.

Having recused himself, JUSTICE PEARCE does not participate
herein; COURT OF APPEALS JUDGE DIANA HAGEN sat.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1 This case comes to us on certification from the United States District Court for the District of Utah. *See* UTAH R. APP. P. 41. The district court certified three questions relating to the interpretation of the Governmental Immunity Act of Utah, Utah Code sections 63G-7-101 to 904 (Immunity Act). The certified questions are as follows:

1. Are the Utah State University Research Foundation and the Utah State University Advanced Weather Systems Foundation entitled to immunity under the Governmental Immunity Act of Utah . . . as a public corporation and/or an instrumentality of the state?

2. Utah Code sections 63G-7-501 and 502 vest exclusive, original jurisdiction over any action brought under the Immunity Act in the district courts and venue in the county in which the claim arose or in Salt Lake County. Do these provisions reflect an intent by the State of Utah to limit the Immunity Act's waiver of sovereign immunity to suits brought in Utah district courts?

3. If question 2 is answered in the affirmative, does the Office of the Attorney General for the State of Utah or any litigant have authority under Utah law to waive the jurisdictional and venue provisions enacted by the Utah Legislature in the Immunity Act?

¶2 These questions raise important, unanswered questions of state law. We therefore provide the applicable legal standard for determining what is an instrumentality of the state. However, "[o]ur authority to answer certified questions . . . is a matter of discretion." *Zimmerman v. Univ. of Utah*, 2018 UT 1, ¶ 2, 417 P.3d 78 (citations omitted). And we use that discretion here to decline to establish a legal standard for public corporation immunity based on the focus of the parties' briefing.

¶3 The second and third certified questions are relevant only if one of the entities involved is an instrumentality of the state or a public corporation. Because that is a decision that must be made by the district court, we forgo answering the second and third

questions before the first question has been answered in the affirmative, thereby necessitating answers to these questions. However, we noted significant confusion among the parties about the proper interpretation of the second and third certified questions. In light of this, we highlight this confusion so that, should the district court choose to certify these questions to us again, we can provide guidance in the way that is most helpful to the district court.

## BACKGROUND

¶4   GeoMetWatch filed a lawsuit against various defendants in federal district court. Relevant to this certification from the district court, GeoMetWatch brought causes of action against Utah State University Research Foundation (USURF) and two of its employees—Robert Behunin and Curtis Roberts—and Utah State University Advanced Weather Systems Foundation (AWSF) and one of its employees—Scott Jensen.[1]

¶5   USURF and AWSF are both 501(c)(3) nonprofit corporations wholly owned and operated by Utah State University (USU). USURF and AWSF were incorporated to carry out the functions of USU. Additionally, both entities' founding boards are appointed by USU.

¶6   The defendants filed motions for summary judgment in federal court on multiple claims, alleging that the district court lacks jurisdiction over the claims because GeoMetWatch had not complied with the notice and undertaking requirements in the Immunity Act. As a result of those motions, the district court "became concerned that it may not have jurisdiction to adjudicate whether the procedural requirements of the Immunity Act have been met due to the jurisdiction and venue limitations in Utah Code sections 63G-7-501 and 502."

¶7   Based on these concerns, the district court certified three important but unresolved questions of state law for our review. We have jurisdiction pursuant to Utah Code section 78A-3-102(1).

---

[1] All references to the defendants in this opinion are limited to the defendants before us on the certified questions. Additionally, references to arguments made by USURF were also made by Robert Behunin and Curtis Roberts. Likewise, references to arguments made by ASWF were also made by Scott Jensen.

GeoMetWatch Corp. *v.* Utah State Univ. Research Found.

Opinion of the Court

**STANDARD OF REVIEW**

¶8   "A certified question from the federal district court does not present us with a decision to affirm or reverse a lower court's decision; as such, traditional standards of review do not apply." *Garfield Cty. v. United States*, 2017 UT 41, ¶ 6, ---P.3d--- (citation omitted). When presented with a certified question, "we merely answer the question presented, leaving resolution of the parties' competing claims and arguments . . . up to the federal courts, which of course retain jurisdiction to decide [the] case." *Id.* (alterations in original) (citation omitted) (internal quotation marks omitted).

**ANALYSIS**

¶9   The federal district court has certified three questions of state law. The first question is focused on whether the defendants are public corporations or instrumentalities of the state and are thereby covered governmental entities for the purposes of the Immunity Act. We set out the applicable legal standard for determining whether an entity is an instrumentality of the state, but we do not address whether the defendants meet this criterion. Instead, we leave this determination to the district court. We also decline to address the appropriate legal standard for determining whether an entity is a public corporation.

¶10 The second and third certified questions require us to interpret the jurisdiction and venue provisions of the Immunity Act. The parties disagree about the proper interpretation of the thrust of these questions. And, based on the contents of the certification order, we see additional potential interpretations not addressed by the parties. Because these questions are relevant only if the defendants are governmental entities under the Immunity Act, we decline to answer these questions before the district court determines whether the defendants are covered by the Immunity Act.

¶11 Nonetheless, we view certification orders as a dialogue between our court and the federal courts. So we discuss the relevant interpretations presented by the parties or contemplated by this court. By doing so, we hope to provide the district court with the opportunity to clarify the true nature of the question posed to both the parties and to this court should the district court choose to certify these questions to us again.

## I. GOVERNMENT ENTITY UNDER THE GOVERNMENT IMMUNITY ACT

¶12 The Immunity Act is a "comprehensive chapter" containing "waivers and retentions of immunity" that "appl[y] to all functions of government" and "govern[] all claims against governmental entities or against their employees or agents [under specific conditions]." UTAH CODE § 63G-7-101(2).[2] Unless immunity is waived by the Immunity Act, "each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function." *Id.* § 63G-7-201(1).

¶13 The defendants contend that they are governmental entities or employees of a governmental entity covered by the Immunity Act. The term "[g]overnmental entity" means "the state and its political subdivisions as" defined in the Immunity Act. *Id.* § 63G-7-102(4). The "[s]tate" is defined as "the state of Utah, and includes each office, department, division, agency, authority, commission, board, institution, hospital, college, university, Children's Justice Center, *or other instrumentality of the state*." *Id.* § 63G-7-102(10) (emphasis added). "Political subdivision" is defined as "any county, city, town, school district, community reinvestment agency, special improvement or taxing district, local district, special service district, an entity created by an interlocal agreement adopted under Title 11, Chapter 13, Interlocal Cooperation Act, or other governmental subdivision *or public corporation*." *Id.* § 63G-7-102(8) (emphasis added).

¶14 The defendants do not argue that they fall under one of the specifically enumerated categories in the definitions of state or

---

[2] The events that gave rise to GeoMetWatch's claims against the defendants occurred between 2009 and 2014. "As a general rule, when adjudicating a dispute we apply the version of the statute that was in effect 'at the time of the events giving rise to [the] suit.'" *Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 12, 227 P.3d 256 (alteration in original) (citation omitted). However, when the differences between the version in effect at the time of the events "and the current version of the statutes are inconsequential [to the] case, we cite to the current version." *Hammons v. Weber Cty.*, 2018 UT 16, ¶ 1 n.2, 417 P.3d 624. Unless otherwise noted, we cite the current version for all statutes in this opinion.

political subdivision. Instead, they contend that they are covered under the catchall provisions of "other instrumentality of the state" and "other . . . public corporation." The first certified question asks us to interpret these broad terms so that the district court may determine whether USURF and AWSF fall into one of these sweeping categorical expressions.

¶15  When interpreting a statute, "our primary objective is to ascertain the intent of the legislature." *Scott v. Scott*, 2017 UT 66, ¶ 22, ---P.3d--- (citation omitted). "Because [t]he best evidence of the legislature's intent is the plain language of the statute itself, we look first to the plain language of the statute." *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 15, 301 P.3d 984 (alteration in original) (citation omitted) (internal quotation marks omitted). If the legislature has not defined a term, we must look to other sources "to derive its meaning—to either the ordinary meaning of the word, or to its technical sense as a legal term of art." *State v. Bagnes*, 2014 UT 4, ¶ 13, 322 P.3d 719 (citations omitted).

¶16  A term of art is a "specialized legal term[] that carr[ies] an extra-ordinary meaning." *State v. Canton*, 2013 UT 44, ¶ 28, 308 P.3d 517. "[W]hen a word or phrase is transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." *Id.* (citation omitted) (internal quotation marks omitted). To be a term of art, there must be "a firmly rooted . . . notion" of the word or phrase. *Id.* ¶ 29; *see also In re Adoption of B.B.*, 2017 UT 59, ¶ 55, 417 P.3d 1 ("A term of art has one established meaning . . . ." (citations omitted)).

¶17  Citing two cases from other states, GeoMetWatch argues that we should treat instrumentality of the state and public corporation as terms of art for the purposes of the Immunity Act. However, those two cases are unhelpful here—they hold that instrumentality of the state and public corporation are terms of art in their respective states based upon the use of one of those terms in the state's constitution, code, or caselaw. *See Hagman v. Meher Mount Corp.*, 155 Cal. Rptr. 3d 192, 195 (Cal. Ct. App. 2013) (deeming public corporation a term of art based on its usage in California's constitution, code, and caselaw); *Slowinski v. Eng. Econ. & Indus. Dev. Dist.*, 828 So.2d 520, 523, 528 (La. 2002) (concluding that when the legislature expressly labels a body an instrumentality of the state, the legislature is using the phrase as a term of art that is defined in a constitutional provision).

¶18 And GeoMetWatch makes no argument that instrumentality of the state and public corporation are terms of art in Utah based upon this state's code, constitution, or caselaw.[3] Nor does GeoMetWatch make any attempt to compare Utah's use of these terms to the other states' uses to support a determination that they are terms of art in this state. In fact, when GeoMetWatch discusses how instrumentality of the state and public corporation should be defined as terms of art in Utah, it does not reference their use as terms of art in California and Louisiana or even mention those cases to buttress its argument.

¶19 Additionally, GeoMetWatch fails to provide a definition that each term should have when used as a term of art in Utah. In fact, GeoMetWatch fails to analyze each term separately at all. Instead, GeoMetWatch cites more than a dozen cases from other jurisdictions that deal with terms *different* than the ones that are at issue here. For example, many of the cases cited attempt to define "arm of the state," which is a term relevant for Eleventh Amendment immunity purposes. But the governmental immunity provided under the Eleventh Amendment is not coextensive with the coverage provided by the Immunity Act. *See Ambus v. Granite*

---

[3] GeoMetWatch's argument that the Immunity Act brings with it "the very old soil of the doctrine of sovereign immunity" does not count. We do not just carry forward general principles of law into a new statute governing the subject. *See Nielsen v. State*, 2016 UT 52, ¶ 19, 391 P.3d 166. Instead, there must be an "interpretation *attached to a particular word or phrase . . .* to be carried forward." *Id.* (Emphasis added). If there is "[n]o 'old soil' . . . fastened to the words," there is nothing "that c[an] be transplanted." *Id.* (citation omitted). GeoMetWatch only points to the general notion of sovereign entities from the common law. It fails to point to any "old soil" attached to "instrumentality of the state" or "public corporation" that should be carried forward. *Cf. Standiford v. Salt Lake City Corp.*, 605 P.2d 1230, 1234–35 (Utah 1980) (concluding that "'governmental function' is a term of art in the law of sovereign immunity" and using the common-law definition in interpreting the predecessor Immunity Act where that term was otherwise undefined), *superseded by* UTAH CODE § 63-30-2(4)(a) (1987), *as recognized in Tindley v. Salt Lake City Sch. Dist.*, 2005 UT 30, 116 P.3d 295.

*Bd. of Educ.*, 995 F.2d 992, 995 (10th Cir. 1993) (holding that school districts are not "arms of the state" for Eleventh Amendment immunity purposes despite being expressly included as a "political subdivision" under the Immunity Act); *see also infra* ¶¶ 52–54. Moreover, the cited cases use tests that apply widely variant criteria.[4] GeoMetWatch asks us to take these tests, notwithstanding their disparity and analysis of terms *other* than public corporation or instrumentality of the state, and create a *single* six-part test for *both* public corporation and instrumentality of the state. This request runs contrary to our settled principles of statutory construction, and we refuse to undertake an analysis that would do such an injustice to the statute.[5]

---

[4] This makes sense given that the cases are trying to define different terms.

[5] At one point, GeoMetWatch argues that the six-part test should be used to determine whether "an entity is a governmental entity." This is not only outside the scope of the certified question, but also an inappropriate endeavor. It is axiomatic that we give effect to definitions in a statute. *See, e.g.*, *Salt Lake City v. Roberts*, 2002 UT 30, ¶ 18, 44 P.3d 767 ("When a legislative body provides a section containing the definitions of terms, and specifies the legislation to which the definitions apply, this demonstrates the body's intent that the definitions establish meaning where the terms appear within the legislation." (citation omitted) (internal quotation marks omitted)); *Creameries of Am., Inc. v. Indus. Comm'n*, 102 P.2d 300, 302 (Utah 1940) ("Where words are defined in a particular statute, and it is clear that the legislature intended to give to such words a different meaning than the one generally and ordinarily given to such words, the statutory definition is the one to be applied."); *see also* UTAH CODE § 68-3-11 ("[W]ords and phrases . . . [that] are defined by statute[] are to be construed according to such . . . definition."). The legislature expressly defined "governmental entity" in the Immunity Act as "the state and its political subdivisions as both are defined in this section." *See* UTAH CODE § 63G-7-102(4). And there are definitions for both "state" and "political subdivision" in the statute. *Id.* § 63G-7-102(8), (10). The question before us is not what constitutes a "governmental entity" for purposes of the Immunity Act—the legislature has already answered that question. The question we

¶20 We are unconvinced by GeoMetWatch's arguments that we should treat public corporation or instrumentality of the state as terms of art in the Immunity Act. And our own review of these terms convinces us that they are not terms of art consistently used throughout our law.[6] Therefore, we focus our attention on the

must address is what are the meanings of "other instrumentality of the state" and "other . . . public corporation" as they are used in the Immunity Act. *See supra* ¶ 1. For these reasons, GeoMetWatch's analysis is not helpful in interpreting these phrases.

[6] We discuss the inconsistent uses of public corporation in our law below. *See infra* ¶¶ 37–43. Instrumentality of the state likewise lacks consistent usage. Prior to the original enactment of the Immunity Act, we classified "school districts [as] instrumentalities of the state" for purposes of sovereign immunity. *Campbell v. Pack*, 389 P.2d 464, 465 (Utah 1964). Prior caselaw has also said that "the municipal corporation also acts as the instrumentality of the state. . . ." *Branch v. Salt Lake Cty. Serv. Area No. 2-Cottonwood Heights*, 460 P.2d 814, 820 (Utah 1969) (Callister, J., dissenting). These cases are inconsistent with later caselaw defining instrumentality of the state. *See Davis v. Cent. Utah Counseling Ctr.*, 2006 UT 52, ¶ 21, 147 P.3d 390 (concluding that an interlocal agency is not an "instrumentality of the [s]tate" where "the [s]tate played no part in its creation [and] does not operate" the agency, even though "the State exercises certain statutory policymaking and administrative control over" the agency).

Moreover, those earlier cases are inconsistent with the language of the Immunity Act itself. Both school districts and municipal corporations (which include cities and towns, *see* UTAH CODE § 10-1-104(5) (including cities and towns in the definition of "[m]unicipality")) *id.* § 10-1-201 (deeming municipalities "municipal corporations") are covered in the Immunity Act's definition of "political subdivision," while "other instrumentality of the state" is included in the definition of "state." *Id.* § 63G-7-102(8), (10). It would be anomalous for us to include school districts, cities, and towns in the definition of "other instrumentality of the state" while the Immunity Act squarely places them in the definition of "political subdivision" instead.

Other sections of the Utah Code likewise deem certain public entities as "instrumentalit[ies]" of the state" even though those entities are created by what the Immunity Act deems "political

ordinary meaning of those terms as used in the Immunity Act. *See Bagnes*, 2014 UT 4, ¶ 13 (stating that we derive a term's meaning either from its "ordinary meaning" or from "its technical sense as a legal term of art").

¶21 Dictionaries provide a useful starting point when assessing the ordinary meaning. *Id.* ¶ 14. "The dictionary is useful in cataloging a range of possible meanings that a statutory term may bear. It provides an historical record, not necessarily all-inclusive, of the meanings which words in fact have borne." *Id.* (citation omitted) (internal quotation marks omitted). But "the dictionary alone is often inadequate to the task of interpretation" because different definitions may support different interpretations. *Id.* Accordingly, when the dictionary is inconclusive, we turn to other canons of statutory construction to focus our interpretation. *See id.* ¶¶ 14–21.

¶22 We do so here for the term "other instrumentality of the state"—we begin with the dictionary definitions and then turn to other canons as necessary. We would undertake the same mode of analysis for public corporation, but the lack of briefing on the appropriate method of analysis for this term leads us to decline to answer this part of the first certified question. Importantly, we limit our analysis to the question certified to us and leave the ultimate resolution of the parties' case to the federal court. *See Garfield Cty. v. United States*, 2017 UT 41, ¶ 6, ---P.3d---.

### A. Other Instrumentality of the State

¶23 As a starting point for our assessment of "other instrumentality of the state," both USURF and AWSF point us to

---

subdivisions." *See, e.g., id.* § 11-3-13 (deeming a financing authority "an instrumentality of the state"); *id.* § 11-3-3(1) (allowing financing authorities to be created by "[t]he governing body of any county"); *see also id.* § 17D-2-103(1) (calling a "local building authority . . . an instrumentality of the state, created by a local entity"); *id.* § 17D-2-102(7) (defining a "[l]ocal entity" as "a county, city, town, school district, local district, or special service district"). And these statutes are likewise inconsistent with the use of "instrumentality of the [s]tate" in *Davis*, 2006 UT 52, ¶¶ 20–21.

The inconsistent usage of these terms in our law means that they are not terms of art and there is no "old soil" that they can bring into the Immunity Act.

dictionary definitions of instrumentality. Looking at the dictionaries they cite, two operative categories emerge: 1) a general definition of instrumentality as a means by which something is achieved and 2) a more specific definition of instrumentality as it relates to governmental operation. For example, *Black's Law Dictionary* provides two relevant definitions for instrumentality: "1. A thing used to achieve an end or purpose. 2. A means or agency through which a function of another entity is accomplished, such as a branch of a governing body." *Instrumentality*, BLACK'S LAW DICTIONARY (10th ed. 2014). Similarly, instrumentality has been defined as "2. A means; an agency. 3. A subsidiary branch, as of a government, by means of which functions or policies are carried out," *Instrumentality*, AMERICAN HERITAGE® DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2016) and "[2a:] something by which an end is achieved : MEANS . . . [b:] something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out [:] a part, organ, or subsidiary branch esp. of a governing body," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, (14th ed. 2016).

¶24 As these varying definitions show, and as several other courts have recognized, "instrumentality . . . is a word susceptible of more than one meaning and is therefore potentially ambiguous." *Green v. City of N.Y.*, 465 F.3d 65, 79 (2d Cir. 2006); *see also Edison v. Douberly*, 604 F.3d 1307, 1309 (11th Cir. 2010). Therefore, although the dictionary definitions are a useful starting point, "alone [they are] inadequate to the task of interpretation." *Bagnes*, 2014 UT 4, ¶ 14. To undergo a proper interpretation, we must turn to other canons of statutory construction in our assessment of the ordinary meaning intended by the legislature. These canons show that the legislature intended a meaning focused on government operations.

¶25 "[O]ther instrumentality" does not appear in isolation but as a catchall term at the end of an exemplary list that is modified by "of the state." *See* UTAH CODE § 63G-7-102(10). USURF correctly points us to two canons we find particularly useful in interpreting this type of catchall term: *ejusdem generis* and *noscitur a sociis*. *See In re Disconnection of Certain Territory from Highland City*, 668 P.2d 544, 547–48 (Utah 1983) (recognizing that when an ambiguous general catchall provision accompanies a specific list, *ejusdem generis* and *noscitur a sociis* "require that the general words be restricted to a sense analogous to the specific words"); *see also*

GeoMetWatch Corp. *v.* Utah State Univ. Research Found.

Opinion of the Court

*Green*, 465 F.3d at 79 n.10 (relying on *ejusdem generis* and *noscitur a sociis* to interpret "other instrumentality of a State").

¶26 *Ejusdem generis*[7] is a subset of *noscitur a sociis*, which presumes that "[words] grouped in a list should be given related meaning." *Fire Ins. Exch. v. Oltmanns*, 2018 UT 10, ¶ 11, 416 P.3d 1148 (citation omitted); *see* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 205 (2012) (distinguishing *ejusdem generis* as part of "the more general rule *noscitur a sociis*," but containing a "necessary specific-general sequence in the enumeration"). *Ejusdem generis* presumes "that in order to give meaning to a general term, the general term is understood as restricted to include things of the same kind, class, character, or nature as those specifically enumerated, unless there is something to show a contrary intent." *State ex rel. A.T.*, 2001 UT 82, ¶ 12, 34 P.3d 228. In its simplest terms, *ejusdem generis* "posits that general catchall terms appearing at the beginning or end of an exemplary statutory list are understood to be informed by the content of the terms of the list." *Bagnes*, 2014 UT 4, ¶ 18; *see also* Scalia & Garner, *supra* at 199–200 ("When the initial terms [in a series] all belong to an obvious and readily identifiable genus, one presumes that the speaker or writer has that category in mind for the entire passage. . . . And . . . when the tagalong general term is given its broadest application, it renders the prior enumeration superfluous.").

¶27 Therefore, it is necessary to turn to the specific terms in the statute to give meaning to "other instrumentality of the state." Under the statute, the "[s]tate" is defined as "the state of Utah, and includes each office, department, division, agency, authority, commission, board, institution, hospital, college, university, Children's Justice Center, or other instrumentality of the state."

---

[7] Literally, "'of the same kind,' and . . . a variation of the maxim *noscitur a sociis*." 2A Sutherland, Statutes and Statutory Construction § 47.17 Ejusdem generis (Norman Singer, 7th ed. 2017). *Ejusdem generis* instructs that "where general words follow specific words in an enumeration describing a statute's legal subject, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id.* (footnotes omitted).

UTAH CODE § 63G-7-102(10).[8] Any entity arguing that it falls within the catchall provision of "other instrumentality of the state" must show that it is "of the same kind, class, character, or nature," *A.T.*, 2001 UT 82, ¶ 12, as the twelve specifically enumerated terms.

¶28  It is sometimes possible for us to apply *ejusdem generis* to a statute and delineate the specific commonalities between the terms. *See, e.g., Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 33, 199 P.3d 957 (concluding that all of the terms in the list "involve intentional behavior," so the catchall term "'fault' should not be interpreted to include unintentional behavior"). But at other times, our analysis focuses on whether the specific requested application falls outside the catchall under the principle of *ejusdem generis. See, e.g., A.T.*, 2001 UT 82, ¶ 13 (recognizing that under *ejusdem generis* the "catchall phrase, 'any other act of lewdness[,]' . . . obviously includes a wide variety of acts," and concluding only that the alleged act of lewdness was clearly included in the parameters of the term); *Isaacson v. Dorius*, 669 P.2d 849, 851 (Utah 1983) (using *ejusdem generis* to determine that "'reports' and 'tax returns[]' have little or no affinity with 'notice of appeal[,]' [because notice of appeal] is a term for a judicial procedure, that . . . controls the very functioning of the judiciary" while the other statutory terms "ha[ve] no such connotation," without specifically stating the connotation of the statutory terms).

¶29 The parties have not briefed what commonalities the twelve enumerated terms share. And the commonalities between

---

[8] GeoMetWatch argues that *ejusdem generis* and *noscitur a sociis* are inappropriate interpretive tools to use in this case because "there are dozens, if not hundreds of private 'institutions,' 'hospitals,' and 'colleges' in the state of Utah that could never be classified as the 'State' as that term is used in the Immunity Act." This argument misses the mark. Under the structure of the statute, "of the state" not only modifies "other instrumentality," but also every other term in the list, including institution, hospital, and college. "When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." SCALIA & GARNER, *supra* ¶ 26 at 147.

the twelve terms are not so readily apparent that we believe this is a time where *ejusdem generis* allows us to delineate the specific commonalities at a general level. Instead, determining whether an entity qualifies as an "other instrumentality of the state" requires a comparison between that entity's specific characteristics and those of the twelve enumerated terms, keeping the dictionary definitions of the enumerated terms in mind. Therefore, the ultimate inquiry is whether the entity is a branch of the state that carries out state functions, and, if so, whether that branch and its functions are "of the same general kind, class, character, or nature as those enumerated" terms. *A.T.*, 2001 UT 82, ¶ 12.

¶30  This is not an analysis for us to undertake in this case. In responding to a certified question, we answer the question posed, leaving to the federal courts the application of that legal standard to the specific facts of the case at hand. *Garfield Cty. v. United States*, 2017 UT 41, ¶ 6, ---P.3d---. We can, of course, "refer to surrounding facts and circumstances not just to set the stage for our resolution of questions certified by federal courts, but also to illustrate the application of our answer in the context of the case." *Fundamentalist Church of Jesus Christ of Latter-day Saints v. Horne*, 2012 UT 66, ¶ 9, 289 P.3d 502 (citations omitted). But we lack sufficient briefing on the commonalities of the twelve enumerated terms and whether AWSF and USURF share those commonalities. We therefore leave this determination to the federal district court in subsequent proceedings.

### B. Other Public Corporation

¶31  AWSF and USURF do not undertake the same thorough analysis for public corporation. Although we are not bound by the parties' interpretation of a statute, *see Kaiserman Assocs., Inc. v. Francis Town*, 977 P.2d 462, 464 (Utah 1998) ("We should not be forced to ignore the law just because the parties have not raised or pursued obvious arguments."); *see also State v. Rasabout*, 2015 UT 72, ¶ 37, 356 P.3d 1258 (Durrant, C.J., concurring in part and concurring in the judgment) ("[W]e may, and often have, employed dictionaries, canons of construction, or other tools for statutory interpretation that have not been argued by the parties."), we find the briefing on public corporation detrimental to our ability to engage in the analysis necessary to do justice to the statute.

¶32 Certified questions present an unusual procedural posture, resulting in unique challenges to our decision-making

process. *See Zimmerman v. Univ. of Utah*, 2018 UT 1, ¶¶ 13–14, 417 P.3d 78. Instead of being asked to review a lower court's determination of legal standards and their application to the case, "we are addressing abstract questions of law." *Id.* ¶ 13.

¶33 The first certified question asks us to create a legal test for the catchall phrase "other public corporation." Under normal circumstances, we would be required to determine if the state district court was correct in determining whether a certain entity qualifies as a public corporation, and we would discuss the principles only as they are relevant to that entity. Here, in order to answer the question, we would be required to create an overarching test applicable to every potential public corporation.

¶34 This is not to say that such an analysis could not be done—it is possible, and some day it may be necessary for us to create such an overarching test. And, under the proper circumstances, we would not shy away from such a task. But the proper circumstances do not exist here.

¶35 As demonstrated below, *see infra* ¶¶ 36–44, selecting the appropriate definition of public corporation is not a simple or straightforward exercise. And the challenges presented in responding to a certified question are compounded by briefing that misses the mark. *See In re Kiley*, 2018 UT 40, ¶ 13, ---P.3d---.

¶36 USURF's sole analysis is to point us to Utah Code section 63E-1-102(7), which defines public corporation as "an artificial person, public in ownership, individually created by the state as a body politic and corporate for the administration of a public purpose relating to the state or its citizens." USURF argues that we should construe the Immunity Act "in harmony with other statutes in the same chapter and related chapters," *Delta Canal Co. v. Frank Vincent Family Ranch, LC*, 2013 UT 69, ¶ 16, 420 P.3d 1052 (citation omitted), especially because the definition has been expressly incorporated into Utah Code section 63G-6a-103(63).

¶37 AWSF undertakes a slightly more in-depth analysis, pointing us to dictionary definitions of public corporation.[9] But

---

[9] AWSF provides us with two dictionary definitions. Notably, it points to one of the definitions of public corporation in *Black's Law Dictionary*: "A corporation that is created by the state as an agency in the administration of civil government." *Public*

the only analysis AWSF undertakes to support those definitions is to point to the definition from section 63E-1-102(7) and *Utah Farm Bureau Ins. Co. v. Utah Ins. Guar. Ass'n*, 564 P.2d 751, 754–55 (Utah 1977) (noting that another jurisdiction recognized a public corporation as an entity "created for public purposes connected with the administration of government") (citation omitted).

¶38 USURF and AWSF have failed to convince us that the legislature intended for the definition of public corporation in 63E-1-102(7) to apply to the Immunity Act. The Immunity Act "contains no indication that [public corporation is] defined elsewhere." *I.M.L. v. State*, 2002 UT 110, ¶ 29, 61 P.3d 1038 (refusing to incorporate the definition from one section of the criminal code into another section of the criminal code, even though both sections appeared in the same chapter).

¶39 Instead, we see many indications that importing the definition of public corporation from section 63E-1-102 into the Immunity Act would be contrary to the legislature's intent.[10] We raise these concerns and engage in this discussion not to decide this issue or to put our thumb on the scale in any way but to highlight the briefing issues and explain our reasoning for not reaching the ultimate question.

¶40 Looking closely at the definition in section 63E-1-102, along with sections in the code that have incorporated that definition, it initially appears that it is talking about a narrow

---

*Corporation*, BLACK'S LAW DICTIONARY. We are skeptical of limiting the definition of public corporation in the Immunity Act to solely those created by the state. *See infra* ¶ 40. Additionally, AWSF makes no mention of, or any attempt to distinguish its preferred definition from, a second definition provided by *Black's Law Dictionary*: "A government-owned corporation that engages in activities that benefit the general public, usu. while remaining financially independent." *Public Corporation*, BLACK'S LAW DICTIONARY. This cursory briefing does not provide us with sufficient assistance in determining the correct interpretation of the Immunity Act.

[10] We would also have to import the Immunity Act's definition of "state" into section 63E-1-102. "State" isn't defined in section 63E, and we would, at least by implication, be saying that "state" includes everything in the Immunity Act's definition.

subsection of public corporations—those created by the legislature by special act—and not all public corporations are meant to be covered by the Immunity Act.[11] Section 63E-1-102 limits the definition of public corporation to "an artificial person, public in ownership, *individually* created by the *state* as a body politic and corporate for the administration of a public purpose relating to the *state or its citizens*." (Emphases added). The legislature has incorporated that definition into a statute that *individually* creates a body corporate and politic that serves a *statewide* public purpose. *See* UTAH CODE § 63H-1-201.

¶41 None of the parties addressed the use of *ejusdem generis* or *noscitur a sociis* in interpreting "other public corporation." We found these canons extremely helpful in interpreting "other instrumentality of the state." *See supra* ¶¶ 24–27. A brief analysis under *ejusdem generis* and *noscitur a sociis* confirms our skepticism of using the definition from section 63E-1-102. With the possible exception of an interlocal entity (if created with participation of the state), every entity listed in the definition of "political subdivision" is created by a local governing body or the people of an area not encompassing the entire state to serve a public purpose that is limited to its narrow jurisdiction.[12]

---

[11] While the Utah Constitution bans the creation of corporations by special act, *see* UTAH CONST. art. XII, sec. 1, this court has interpreted this provision to allow legislation that "promotes a legitimate governmental and statewide purpose, as declared by the legislature," but not legislation that "involve[s] the promotion of private or local interests." *Utah Farm Bureau Ins. Co.*, 564 P.2d at 755 n.10.

[12] *See, e.g.,* UTAH CONST. art. XI, sec. 7 ("The Legislature may by statute authorize:[] *a county, city, or town to establish* a special service district within all or any part of the county, city, or town, to be governed by the governing authority of the county, city, or town, and to provide services as provided by statute . . . ." (emphasis added)); UTAH CODE § 17D-1-103(1) (recognizing that a special service district is "a body corporate and politic with perpetual succession, separate and distinct from the *county or municipality* that creates it" (emphasis added)); *id.* § 17C-1-102(4)(c) (requiring a community redevelopment and renewal agency's boundaries to be coterminous with the municipality or

¶42 This is not to say that *ejusdem generis* or *noscitur a sociis* are appropriate methods of interpretation in this case. This could be a circumstance "[w]here the general term unambiguously exceeds the scope of a non-exhaustive list, [which would mean] we cannot read the list to override the clear meaning of the general term." *Graves v. N. E. Servs., Inc.*, 2015 UT 28, ¶ 55, 345 P.3d 619. Indeed, we must remember that we are ultimately interpreting political subdivision. And, in the instance that the legislature incorporated the definition of public corporation in section 63E-1-102 into a statute that individually authorizes a public corporation statewide, the legislature has deemed that entity a "political subdivision of the state." *See* UTAH CODE § 63H-1-201(2).

¶43 *Ejusdem generis* might also be inappropriate if not all of the terms in the list are truly related. At least two of the listed terms (local districts and special service districts) are a "quasi-municipal corporation." UTAH CODE §§ 17B-1-103(1), 17D-1-103(1). In 1935, we recognized that "[t]here is no uniformity of classification of the public agencies which may be set up by a state." *Lehi City v. Meiling*, 48 P.2d 530, 540 (Utah 1935) (noting that at least one source classified public corporations "as municipal, quasi-municipal, and public-quasi corporations"). It is unclear whether our legislature intended to include all of those categories into its definition of public corporation. If that is the

---

the "unincorporated area of the county" that created it); *id.* § 17C-1-201.5(1) (permitting "[a] *community legislative body* [to] . . . create a community reinvestment agency" by ordinance (emphasis added)); *id.* § 17B-1-203(1) (allowing a local district to be initiated by a petition signed by *property owners located within* "the proposed local district" or "a resolution proposing the creation of a local district, adopted by the *legislative body of each county* whose unincorporated area . . . includes and *each municipality* whose boundaries include any of the proposed local district" (emphases added)); *id.* § 53G-3-301(2) (authorizing the creation of a new school district to be initiated by "a citizens' initiative petition," a "request of the *board of the existing district* or districts to be affected," or "at the *request of a city* within the boundaries of the school district" (emphases added)); *id.* § 11-13-203(1) (recognizing that an interlocal entity is "separate from the public agencies that create it"). *But see* UTAH CODE § 11-13-103(19) (recognizing the state as one of the agencies that can create an interlocal entity).

case, we would need to include cities and towns to determine the "same class" for *ejusdem generis*. *See* UTAH CODE § 10-1-104(5) (including cities and towns in the definition of "[m]unicipality"); *id.* § 10-1-201 (deeming municipalities "municipal corporations").

¶44 Additionally, "other public corporation" is only part of the catchall provision. As a whole, the catchall reads "other governmental subdivision or public corporation." *Id.* § 63G-7-102(8). It is unclear to us (without any briefing on the issue) whether the legislature considered each of the individual enumerated terms to be a governmental subdivision, public corporation, or both.

¶45 The parties have also left us without any analysis of other places in the code where a similar or identical definition of "political subdivision" appears. *See, e.g.*, UTAH CODE § 11-50-102(5)(a) (providing an identical definition); *id.* § 11-57-102(4) (same); *id.* § 63G-9-201(1)(a) (same); *id.* § 63A-15-102(5) (including a similar definition); *id.* § 11-55-102(4) (same). While we recognize that many of these statutes were adopted during or after the events that occurred in this case, we find them to be potentially noteworthy examples of the confusion surrounding "public corporation" in our statutes. This is, of course, not to say that we would interpret "political subdivision" and the catchall "other public corporation" in those sections in an identical manner as we would in the Immunity Act. But their existence may (or may not) provide interesting and helpful insight into the interpretive puzzle with which we find ourselves today. The fact that an identical definition of "political subdivision" appears in three different chapters in Title 11 (Cities, Counties, and Local Taxing Units) increases our hesitancy to limit the definition of public corporation to those created solely by the state.

¶46 When a certified question is inadequately briefed, we may exercise our discretion to decline to answer the question. *See Zimmerman*, 2018 UT 1, ¶ 2 ("Because these [certified] questions are not adequately briefed by the parties we decline to resolve them here."). Had the parties undertaken some of this analysis in their briefs, we would be in a much better position to create an overarching test for "other public corporation." "But the parties have not given us the kind of adversary briefing that we would need to resolve these important issues with confidence, and we therefore decline to do so." *Id.* ¶ 28. We are unwilling to undertake such an analysis on our own, particularly in light of the unique challenges we face in answering a certified question. We

therefore exercise our discretion to decline to answer this portion of the first certified question.

## II. JURISDICTION AND VENUE UNDER
## THE IMMUNITY ACT

¶47 The federal district court certified to us two additional questions about the interpretation of the Immunity Act. These questions are relevant only if the district court decides that USURF or AWSF is a governmental entity for the purposes of the Immunity Act.

¶48 Because we do not decide whether USURF or AWSF is a governmental entity, it is not appropriate for us to answer the second and third certified questions at this time. However, there appears to be significant confusion among the parties about the appropriate interpretation of the certified questions. Taking this opportunity to engage in a dialogue with the district court, we highlight the different interpretations set forth by the parties and contemplated by this court. If the district court ultimately determines that USURF or AWSF is a governmental entity and decides to certify the second and third questions to this court again, we hope that this dialogue will aid the district court in clarifying the correct interpretation of these questions, allowing us to answer the questions "in a context and manner useful to the resolution of [the] pending federal case." *Zimmerman v. Univ. of Utah*, 2018 UT 1, ¶ 13, 417 P.3d 78 (citation omitted).

### A. Are the Jurisdiction and Venue Provisions Required to
### Be Followed for Waiver of Governmental Immunity?

¶49 The second certified question asks us whether the jurisdiction and venue provisions in the Immunity Act, Utah Code sections 63G-7-501 and 502, "reflect an intent by the State of Utah to limit the Immunity Acts [sic] waiver of sovereign immunity to suits brought in Utah district courts."[13] The parties

---

[13] The jurisdiction section states that "[t]he district courts have exclusive, original jurisdiction over any action brought under this chapter." UTAH CODE § 63G-7-501(1). Relatedly, the venue section provides:

(1) Actions against the state may be brought in the county in which the claim arose or in Salt Lake County.

. . . .

provide us with a variety of potential interpretations of this question. But, upon careful examination of the certification order and the relevant caselaw, we see an additional interpretation that was not addressed in the briefing.

¶50 USURF sees three different interpretations of the question. First, USURF believes the question could be interpreted as asking whether those sections of the Immunity Act "define jurisdiction and venue in Utah's state courts." Second, USURF believes the question "could be construed to ask whether sections 501 and 502 limit a federal court's subject-matter jurisdiction (or federal venue)." Finally, USURF contends the question "could be construed to ask whether the Utah Legislature intended the Immunity Act to waive the State's Eleventh Amendment immunity."

¶51 Conversely, GeoMetWatch simply believes that the question is entirely inappropriate because the Eleventh Amendment, not the Immunity Act, governs all state sovereign immunity questions in federal courts.

¶52 AWSF sees the question slightly differently. AWSF recognizes that the Eleventh Amendment is not the sole source of a state's sovereign immunity. But even AWSF frames its discussion and conclusion based on Eleventh Amendment jurisprudence.

¶53 We see another way of interpreting the district court's question based on the language in the certification order and our caselaw. Cases sometimes refer to "the States' immunity from suit as 'Eleventh Amendment immunity.'" *Alden v. Maine*, 527 U.S. 706, 713 (1999). However, the phrase is "something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Id.* "[T]he States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . ." *Id.*

---

   (3) Actions against all other political subdivisions, including cities and towns, shall be brought in the county in which the political subdivision is located or in the county in which the claim arose.

   *Id.* § 63G-7-502.

¶54 "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Federal courts lack jurisdiction "to entertain a suit brought by private parties against a State without consent given . . . because of the Eleventh Amendment . . . [and] the fundamental rule of which the Amendment is but an exemplification." *Id.* at 98–99 (emphasis omitted) (citation omitted).

¶55 Importantly, "[a] state enjoys another kind of sovereign immunity besides immunity from suit that it may invoke even after agreeing to [suit in federal court]—immunity from liability." *Trant v. Oklahoma*, 754 F.3d 1158, 1172 (10th Cir. 2014). Therefore, even where a state waives its Eleventh Amendment immunity from a federal forum, the state retains "any defense it would have enjoyed in the state court—including immunity from liability for particular claims." *Stroud v. McIntosh*, 722 F.3d 1294, 1302 (11th Cir. 2013).

¶56 "[S]tate law . . . determine[s] the nature and scope of a state's immunity" outside of the Eleventh Amendment. *Trant*, 754 F.3d at 1172. The Immunity Act is Utah's expression of the nature and scope of its broader immunity. *See Greene v. Utah Transit Auth.*, 2001 UT 109, ¶ 11 n.1, 37 P.3d 1156 ("The doctrine of sovereign immunity requires that government must consent before any action is brought against it. The Immunity Act represents such consent by the Utah Legislature." (citation omitted)). We find several provisions of the Immunity Act, along with our prior jurisprudence interpreting the Immunity Act, instrumental in crafting what we believe is the correct interpretation of the second certified question.

¶57 The Immunity Act is a "comprehensive chapter" containing "waivers and retentions of immunity" that "appl[y] to all functions of government" and "govern[] all claims against governmental entities or against their employees or agents [under specific conditions]." UTAH CODE § 63G-7-101(2). The Immunity Act contains limited waivers of immunity for particular types of claims. *See id.* § 63G-7-301. However, these waivers are "conditioned upon compliance with the Immunity Act." *Xiao Yang Li v. Univ. of Utah*, 2006 UT 57, ¶ 7, 144 P.3d 1142.

¶58 The Immunity Act "provide[s] a protocol that must be followed by those seeking to file a claim against the government." *Carter v. Univ. of Utah Med. Ctr.*, 2006 UT 78, ¶ 13, 150 P.3d 467

(discussing a predecessor to the current venue provision). "We consistently have interpreted the Immunity Act to require strict compliance by plaintiffs." *Davis v. Cent. Utah Counseling Ctr.*, 2006 UT 52, ¶ 42, 147 P.3d 390. Importantly, we have recognized that "allowance of a claim against [a governmental entity] is a statutorily created exception to the Doctrine of Sovereign Immunity." *Id.* (alteration in original) (citation omitted). Accordingly, "[t]he statutory right to sue a governmental entity may be circumscribed by any conditions that the Legislature may see fit to impose, and compliance with those conditions is an 'indispensable prerequisite' in suits against governmental entities." *Id.* (citation omitted) (internal quotation marks omitted); *see also Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 23, 24 P.3d 958 ("[W]here the government grants statutory rights of action against itself, any conditions placed on those rights must be followed precisely."). "The requirement of strict compliance, therefore, is a recognition of the government's sovereign immunity and its right to dictate the terms and conditions of its waiver of that immunity." *Davis*, 2006 UT 52, ¶ 42; *see also Wheeler v. McPherson*, 2002 UT 16, ¶ 11, 40 P.3d 632 ("[T]his standard of strict compliance derives naturally from both basic principles of sovereign immunity and from the text of the Immunity Act itself.").

¶59 In its certification order, the district court recognized that "[t]he Immunity Act represents a limited waiver of the State's broader sovereign immunity, permitting suits against Utah only under specific conditions set by the Legislature." It further acknowledged that "[t]he interpretation of those conditions [in sections 63G-7-501 and 502] . . . is the question now before the federal court [and is] [u]ndoubtedly . . . a question of Utah law."

¶60 Accordingly, we are not inclined to interpret the second question as asking about Eleventh Amendment immunity or general jurisdiction and venue requirements. Instead, we see the likely thrust of the district court's question as much more nuanced—asking us whether the jurisdiction and venue provisions are conditions to a governmental entity's waiver of immunity from liability for particular claims under the Immunity Act.

¶61 Our interpretation of the district court's question could be incorrect. If the district court chooses to certify this question to us again, it would be beneficial to this court to have clarification on

GeoMetWatch Corp. *v*. Utah State Univ. Research Found.

Opinion of the Court

the question presented, allowing the parties to focus their briefing on the relevant issue.

### *B. Can the Jurisdiction and Venue Provisions Be Waived?*

¶62  The third certified question is relevant only if we answer the second certified question in the affirmative. It asks us whether "the Office of the Attorney General for the State of Utah or any litigant [has] authority under Utah law to waive the jurisdictional and venue provisions enacted by the Utah Legislature in the Immunity Act." Because the parties have inconsistent interpretations of the second question, they likewise present different interpretations of the third question. However, they all reach the same conclusion.

¶63  GeoMetWatch continues to insist that this is an Eleventh Amendment issue, and that the Eleventh Amendment can be waived both expressly and impliedly. AWSF similarly engages in a lengthy discussion of Eleventh Amendment jurisprudence on the issue, but also recognizes that the question could raise the issue of separation of powers. USURF takes a slightly different approach, arguing that "no party can waive the [Immunity] Act's jurisdictional or venue requirements in state-court proceedings," but whether a party "can invoke or waive the State's immunity defenses when litigating in federal court" is a federal question with a federal answer.

¶64  The proper interpretation of, and answer to, the third question depends on two factors not discussed by the parties. First, the analysis of the question will differ if sections 63G-7-501 and 502 are treated as general jurisdiction and venue provisions or conditions to the waiver of sovereign immunity. Second, we would be required to undertake a different analysis depending on the person or entity waiving the provisions. Although the district court expressly asks whether the Attorney General has the authority to waive the jurisdiction and venue provisions, it also asks the same of "any litigant." The district court later stated that it was requesting guidance "as to whether Utah law allows for the Utah Attorney General or another governmental litigant to waive the jurisdiction and venue conditions of the Immunity Act." We therefore see a proper analysis of this question focusing on both governmental entities and employees of governmental entities, represented by the Attorney General or by private counsel.

¶65  We believe there are three potential (and interrelated) interpretations of the district court's third question not raised by

the parties: 1) Does the Attorney General or any other litigant have the authority to affirmatively waive compliance with conditions to the waiver of immunity under the Immunity Act?; 2) Can a governmental entity (or an employee of a governmental entity) waive conditions to the waiver of immunity under the Immunity Act by not asserting it?[14]; and 3) Is the assertion of noncompliance with conditions to the waiver of immunity under the Immunity Act subject to equitable remedies based on litigation and/or other conduct?

¶66 Importantly, these interpretations are relevant only if the jurisdiction and venue provisions are treated as conditions to the waiver of immunity. Because we have required "strict compliance to the Immunity Act before determining that the State waived its immunity," *Xiao Yang Li*, 2006 UT 57, ¶ 8, these readings of the district court's third question not only raise the issue of whether a litigant may waive terms and conditions to sovereign immunity, but immunity itself.

¶67 These are very complicated questions without straightforward answers. As AWSF recognizes, the third certified question raises potential separation of powers concerns. We have previously suggested that only the legislature has the authority to waive immunity. *Bailey Serv. & Supply Corp. v. State ex rel. Road Comm'n*, 533 P.2d 882, 883 (Utah 1975) ("Only the legislature can waive sovereign immunity . . . ."); *Fairclough v. Salt Lake Cty.*, 354 P.2d 105, 106 (Utah 1960) ("[C]onsistently and historically we have ruled that the State may not be sued without its consent; . . . and that to secure such consent is a legislative matter, a principle recognized by the legislature itself." (footnotes omitted) (citation omitted)), *overruled on other grounds by Colman v. Utah State Land Bd.*, 795 P.2d 622 (Utah 1990); *see also In re Bear River Drainage Area*, 271 P.2d 846, 848–49 (Utah 1954) ("It is elemental that the Federal government cannot be [sued] without its consent and it has been held that there is no distinction between suits against the government directly and suits against its property. Nor can an officer of the government waive the exemption of the United States from judicial process or submit the United States or its

---

[14] For example, one condition we have previously recognized is providing notice that "strictly complie[s] with the statutory requirements." *Xiao Yang Li*, 2006 UT 57, ¶ 15.

property to the jurisdiction of the court. The waiver of sovereign immunity is the sole prerogative of Congress." (footnotes omitted)). We have even rejected a stipulation between a plaintiff and a governmental entity that "purported to waive governmental immunity" on this ground. *Bailey Serv. & Supply*, 533 P.2d at 883.

¶68 However, we have also characterized sovereign immunity under the Immunity Act as an affirmative defense upon which the defendant bears the burden of proof. *Nelson ex rel. Stuckman v. Salt Lake City*, 919 P.2d 568, 574 (Utah 1996). And affirmative defenses are generally waived by the parties if they are not raised.[15] *See* UTAH R. CIV. P. 8(c) (requiring a party to designate affirmative defenses in their answer); *Gonzalez v. Cullimore*, 2018 UT 9, ¶ 37, 417 P.3d 129 ("If a party fails to raise an affirmative defense pursuant to rule 8(c), generally it is considered waived."). But even the applicability of Utah Rule of Civil Procedure 8(c) to the Immunity Act would require us to determine whether the restrictions on waiver of immunity in the Immunity Act are "all-encompassing" on that issue, both as to immunity as an affirmative defense generally, and as to equitable remedies such as estoppel. *See Craig v. Provo City*, 2016 UT 40, ¶¶ 22–23, 389 P.3d 423; *see also* UTAH CODE § 63G-7-401(7) (prohibiting a governmental entity from challenging the validity of a notice under certain equitable circumstances). Moreover, the applicability of rule 8(c) would require analysis of the ability of a litigant to waive immunity.

¶69 The question of whether a litigant can implicitly waive the terms and conditions found in the Immunity Act through the application of equitable remedies, such as estoppel, provides an even trickier question. With respect to Eleventh Amendment immunity, federal courts have recognized an "extraordinarily effective waiver" of Eleventh Amendment immunity when the state voluntarily removes the case to federal court and litigates it on the merits or otherwise voluntarily invokes the federal court's jurisdiction—to hold otherwise would be "*grossly inequitable*." *See,*

_____

[15] We recognize that our state statutes cannot affect the federal courts' rules of civil procedure, but our state's jurisprudence and rules of civil procedure may still be relevant to an analysis of how immunity under the Immunity Act may be waived.

*e.g.*, *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1235–36 (10th Cir. 1999) (emphasis added) (citation omitted).

¶70 However, our law is not as clear on this subject with regard to the Immunity Act. We have issued what appear to be inconsistent opinions on whether estoppel applies to the terms and conditions found in the Immunity Act.

¶71 We first discussed estoppel in the context of a predecessor to the current Immunity Act in *Rice v. Granite School District*, 456 P.2d 159 (Utah 1969). In that case, we noted that "[g]overnmental immunity from estoppel is a derivative of the doctrine conferring the sovereign entity with immunity from suit without its consent." *Rice*, 456 P.2d at 161 (citation omitted). And we recognized that

> [i]t would appear to be an anomalous situation if we were to hold that although sovereign immunity has been waived, a derivative of that doctrine, governmental immunity from estoppel, is a viable principle which may be asserted to avert liability by an entity denominated by the act as a private person.

*Id.* at 162; *see also* UTAH CODE § 63G-7-202(1)(b) (providing that once immunity is waived by the Immunity Act "liability of the entity shall be determined as if the entity were a private person"). We therefore concluded that a governmental entity's assertion of the statute of limitations in the predecessor Immunity Act was subject to estoppel. *See Rice*, 456 P.2d at 163.

¶72 If the statute of limitations in the Immunity Act is one of the terms and conditions that must be followed for waiver to be effective (an issue not contemplated in *Rice*), *Rice* would be inconsistent with our later holdings that require "strict compliance [with] the Immunity Act before determining that the State waived its immunity." *Xiao Yang Li*, 2006 UT 57, ¶ 8. If a governmental entity is only subject to estoppel once immunity has been waived, *see Rice*, 456 P.2d at 162, then it must follow that estoppel cannot apply to one of the conditions to the waiver of that immunity.

¶73 Since *Rice*, we have issued opinions that continue to acknowledge the availability of estoppel against a governmental entity in Immunity Act cases. *See Wheeler*, 2002 UT 16, ¶¶ 18–19 (recognizing that "governmental entities may be estopped from raising the Immunity Act as a . . . defense," but finding that the

governmental entity was not estopped from raising the insufficiency of the notice because circumstances supporting estoppel were absent from the case); *Shunk v. State*, 924 P.2d 879, 881–82 (Utah 1996) (concluding "that there is no basis to invoke an estoppel against defendants for misleading plaintiff by their answer" in an earlier case on the issue of proper notice because "the State gave [the plaintiff] no misinformation"); *Forsman v. Forsman*, 779 P.2d 218, 220 (Utah 1989) (remanding to allow the plaintiff to present evidence on "whether the State is estopped to assert the lack of timely notice of claim").

¶74 However, we have also issued decisions that appear inconsistent with applying estoppel to the terms and conditions to waiver in the Immunity Act because estoppel would override the explicit requirements of waiver set forth by the legislature. *See Davis*, 2006 UT 52, ¶¶ 42, 45–46 (noting that "[t]he requirement of strict compliance . . . is a recognition of the government's sovereign immunity and its right to dictate the terms and conditions of its waiver of that immunity," and that even though "government employees and officials may even intentionally mislead plaintiffs in some cases," strict compliance with the notice provision is necessary; but not discussing misleading statements in terms of estoppel); *Greene*, 2001 UT 109, ¶ 17 (mandating strict compliance with the notice provisions in the Immunity Act even when an employee of the government entity misleads the plaintiff on the delivery requirements because the employee's "delivery instructions cannot override the requirements set by the legislature"—again deciding without discussing estoppel). There may, of course, be ways of reconciling these cases that the parties could provide in their briefs if this question is certified again to this court. If there is no way to reconcile these cases, and if this is relevant to the clarified question posed by the district court, we would readily welcome additional briefing on the correct line of cases to follow.

¶75 As with our interpretation of the second certified question, our possible interpretations of the third certified question could be incorrect. We acknowledge that the district court may have intended a different interpretation, only one of our interpretations, or a combination thereof. In the event that the district court chooses to certify this question to us again, it would be useful to have clarification from the court, and thereby directed briefing from the parties, on the precise question that the district court needs answered.

**CONCLUSION**

¶76 In this response, we have answered part of the first certified question—setting forth a legal standard for determining whether an entity is an instrumentality of the state under the Immunity Act. Nevertheless, we declined to define what constitutes a public corporation under the Immunity Act. Based on the complicated nature of that inquiry and the focus of the briefing, we save this task for a future date.

¶77 The second and third certified questions are relevant only if the district court determines that USURF or AWSF are an instrumentality of the state or public corporation. Without that determination, we would be writing an advisory opinion on these issues, which might have constitutional implications.

¶78 Although we decline to answer the second and third certified questions, we note the significance of these questions that raise matters of first impression in this state and the propriety of the district court's certification. We recognize that, if the district court determines that AWSF or USURF are governmental entities for the purposes of the Immunity Act, there might be a desire to once again certify these questions to this court for clarification of state law. Therefore, by engaging in a dialogue with the district court, we focus on the confusion of the parties in responding to these questions in their briefing to give the district court the opportunity to clarify the expectations for the parties and this court.

————